HOOD, Judge.
This is an action for damages arising out of an accident which occurred in Pineville, Louisiana, on September 23, 1961, in which two children, Harvey Oxner and Brenda Oxner, were struck by an automobile owned by Johnny Cupp and being driven by Raymond Reeves. This suit was instituted by Mr. and Mrs. Leonard Oxner, parents of the injured minor children, against Cupp and Reeves, and also against Harold Price, Leston J. Hale and Lumbermens Mutual Casualty Company. Price and Hale were the owners and drivers of school busses on which the Oxner children had ridden earlier that day. Lumbermens Mutual Casualty Company is alleged to have been the public liability insurer of Price at the time the accident occurred.
After trial on the merits, judgment was rendered by the district court in favor of the defendants rejecting plaintiffs’ demand,, and plaintiffs have appealed.
The evidence establishes that on Saturday, September 23, 1961, the Alexandria Kiwanis Club and the Pineville Kiwanis Club jointly sponsored and arranged for a “Kids’ Day” celebration, which included the taking of a large group of children on a tour of England Air Force Base, which is located near Alexandria, and providing some entertainment and refreshments for the children.
Invitations to attend this celebration were extended by the Pineville Kiwanis Club to all children of school ages in that city who desired to attend. These invitations were extended through news media and, at the request of the Kiwanis Clubs, by announcements made in public schools. Pursuant to a request of a representative of the Pine-ville Kiwanis Club, the principal of the Pineville ■ Elementary .School announced over the loud-speaker system of that school' on Friday, September 22, 1961, that such a. celebration had been arranged and that invitations had been extended to all children in that school. The Oxner children attended that school and they heard this announcement when it was made.
Representatives of the Pineville Kiwanis Club arranged with five school bus drivers to transport all of the children who desired to attend this celebration from Pineville to the Air Base that morning and then to. *567 transport the children back to Pineville after the program and entertainment had been completed. The understanding with the bus drivers was that the children were to be picked up by these busses at about S:00 o’clock on that Saturday morning at the Pineville Community Center, that they were to be taken to the Air Base for this tour and entertainment, and then the children were to be returned in these busses to the same Community Center when the program planned for that day at the Air Base was over. Harold Price and Leston J. Hale were two of the school bus drivers who agreed to use their busses in providing this transportation. There was no agreement between the Kiwanis Club and these school bus drivers as to the remuneration which the latter should receive, but a few days later the Kiwanis Club voluntarily paid each of said drivers the sum of $10.00 for providing this transportation.
Pursuant to these arrangements about 250 school children assembled at the Pineville Community Center on that Saturday morning, some of whom were brought to the Center by their parents, while others came alone or were unattended by adults. The two Oxner children walked from their home in Pineville to the Community Center, unattended by their parents or by any adult. Harvey was nine years of age at that time and his sister, Brenda, was seven. All of the children who showed up at the Community Center for that purpose were loaded into the five school busses at about 8:00 o’clock that morning and were transported to the Air Base, where they were entertained during most of the morning. The program ended about 11:30 a. m., and the •children then reboarded the busses and were taken back to the Community Center. As soon as each bus driver discharged the passengers on his bus at the Community Center, he left with his bus and he performed no other duties in connection with this celebration.
The two Oxner children rode from the Community Center to the Air Base on a school bus being driven by Mr. Price, and they returned from the Air Base to the Community Center on the bus which was being driven by Mr. Hale. Upon returning to the Community Center, Mr. Hale stopped his bus at the curb, on the east side of Main Street, directly in front of the Community Center. A sidewalk runs along the east side of that street, and all of the passengers got off the bus by means of a door which opened onto the sidewalk. The bus arrived at the Community Center about 12:30 p. m., and immediately after all of the children had safely alighted from that vehicle, Mr. Hale left with his bus and returned to his home.
The two Oxner children, after getting off the bus, proceeded to return to their home by walking in a southerly direction on the sidewalk which runs along the east side of Main Street. There is no' question but that that was a proper route for them to follow in returning to their home. They crossed Regan Street, which intersects Main Street about 150 feet south of the Community Center, and they continued to walk along the east side of Main Street until they reached a point in the next block, more than 500 feet south of Regan Street, when both children decided to cross Main Street about in the middle of the block for the purpose of getting a drink of water. Traffic was very heavy on Main Street at that time, the cars which were traveling north in the east lane of traffic at that time being lined up almost bumper to bumper for the full length of the block. The two children, in attempting to cross the street, darted between two of these cars which were facing north, and immediately after doing so, they entered the southbound lane of traffic directly in front of the automobile being driven in a southerly direction in that lane by Reeves. The evidence establishes that the Reeves car at that time was being driven at a speed of about 10 miles per hour, and that the Oxner children stepped from between two northbound vehicles, which were not moving at the time, in front of the Reeves car when the latter was within a few feet of them. Reeves immediately ap *568 plied his brakes and stopped almost at the point of impact. Both children, however, were struck by his front bumper and as a result of that collision they sustained serious injuries.
Plaintiffs contend primarily that the two school bus drivers, Price and Hale, were under a duty to keep their two young children “under control and in a safe condition and position free from peril or danger,” and that they were negligent in failing to provide proper supervision over such children, in leaving them without supervision on a heavily-traveled thoroughfare, in failing to see that the children were placed on the school grounds of the Pineville Elementary School, and in failing to see that they were under proper supervision of the authorities of that school before leaving them. It is contended that the negligence of Price and Hale in these particulars were proximate causes of the accident.
As we have already pointed out, the members of the local Kiwanis Club sponsored the Kids’ Day celebration in Pineville on that day. It was not a school function, as contended by counsel for plaintiffs. It was held on a Saturday when school was not in session, all activities took place off or away from school premises, and school authorities, as such, had nothing to do with the planning of the activities or with the supervision of the children that day. The only connection which the school had with this affair was the announcing of it at the school in response to a request from the Kiwanis Club. There was no duty or occasion, therefore, for the bus drivers to place the children on the school grounds of the Pineville Elementary School or to see that they were under the supervision of authorities of that school before leaving them.
In Adams v. Great American Indemnity Company, La.App. 2 Cir., 116 So.2d 307 (Cert, denied), it was held that the operator of a school bus falls in the category of a public or common carrier, upon which rests a more onerous duty of care than is imposed upon an ordinary motorist. See also Lewis v. Goodman, La.App.Orl., 92 So.2d 723 (Cert, denied); Mire v. LaFourche Parish School Board, La.App. 1 Cir., 62 So.2d 541 (Cert, denied); 78 C.J.S. Schools and School Districts § 322. We think such a duty rested upon the defendant bus drivers in this case while the children were passengers in the busses which they were operating, even though the children were not being transported in connection with a school function.
In our opinion, however, this duty of care which rested on the bus drivers, as public or common carriers, terminated when the children were discharged safely from the bus at the Community Center. The evidence shows that the parents of many of the children were waiting for them when the busses returned to the Center, and that at least three or four members of the Kiwanis Club also were present for the purpose of providing such supervision as was needed. The bus drivers were engaged to transport the children from the Community Center to the Air Base, and then to return them safely to the Community Center. They did everything they had been engaged to do, and they were under no duty to remain at the Center or to supervise the children further after they had been returned. Under those circumstances, we find no negligence on the part of Price and Hale in leaving immediately after the children had been safely transported to and discharged at the Community Center.
Assuming, however, that there was some duty on the part of the bus drivers to continue to supervise the children after discharging them at the Community Center, we think that under the circumstances presented here they would have been justified in permitting the Oxner children to begin walking home from the Center, unaccompanied by an adult, just as was done. These two children had walked from their home to the Community Center that morning unaccompanied by their parents or by any other adult, and this was done with the knowledge and express permission of their parents, the plaintiffs in this suit. Both *569 children on prior occasions had walked the same route alone in going to and from the Pineville Elementary School, which was located south of and on the opposite side of Main Street from the Community Center. The parents of the Oxner children were not at the Community Center when the busses returned from the Air Base, and neither the children nor the parents had indicated to the bus drivers or to anyone else that the children were not expected to return home in the same manner which they had used in going to the Community Center that morning. Although traffic was heavy on Main Street during the noon hour, it had also been heavy earlier that morning when the children walked to the Center, and it was not necessary for the children to cross Main Street at anytime in walking from the Community Center to their home. This accident occurred after the children had left the Community Center and while they were en route to their home. It occurred, in fact, after the children had walked more than a block from the Center, and while they were deviating from the route which they normally should have taken. Under these circumstances, we feel that there would have been no negligence on the part of the bus drivers in failing to maintain proper supervision, ■even if it should be held that they were under a duty to continue to supervise the ■children after their return to the Community Center.
In our opinion, the trial judge correctly held that defendants Price and Hale were not negligent, and that neither they nor their alleged public liability insurer are liable for damages for the unfortunate accident and injuries which were sustained by these chidren.
The trial judge also concluded that Reeves was not negligent and that neither he nor Cupp, the alleged owner of the automobile which Reeves was driving, was negligent.
The evidence establishes that Reeves was driving at a speed of about 10 miles per hour immediately before the accident occurred, and that the children darted out in front of his car when he was “too close to them” to stop. In our opinion, Reeves was driving at a lawful and reasonable rate of speed, he was maintaining a proper lookout and he did everything within his power to avoid an accident after the children suddenly emerged from between two stationary vehicles directly in front of his moving vehicle.
The jurisprudence of this State is settled to the effect that when a motor vehicle is moving at a lawful speed and its driver is complying with1 the laws regulating speed and the rules of the road, the driver ordinarily is not liable for injuries incurred by a child who darts from behind a parked automobile and emerges in front of the vehicle so suddenly that the driver cannot stop or take other steps in time to avoid injuring him. Hudson v. Byers, La.App. 2 Cir., 73 So.2d 596; Basham v. Ohio Casualty Insurance Company, La.App. Orl., 106 So.2d 129; Lyles v. Aetna Casualty & Surety Company, La.App. 1 Cir., 136 So.2d 542 (Cert. denied); Seale v. Checker Cab Company, La.App. 4 Cir., 137 So.2d 478; Wilson v. Travelers Insurance Company, La.App. 3 Cir., 142 So.2d 563; Schuster v. Audubon Insurance Company, La.App. 4 Cir., 147 So.2d 226; Moore v. American Insurance Company of Newark, N. J., La. App. 1 Cir., 150 So.2d 346.
We think the facts support the conclusion reached by the trial judge that Reeves was free from negligence, and that neither he nor defendant Cupp is liable to plaintiffs for the damages sustained as a result of this accident.
For the reasons herein set out, the judgment appealed from is affirmed. All costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.