732 So.2d 530 (1998)
Marvin JACKSON, individually, and on Behalf of his minor niece, Santana Brown, Plaintiffs-Appellants,
v.
Jack COLVIN, Allstate Insurance Company, Calcasieu Parish School Board, Defendants-Appellees.
No. 98-182
Court of Appeal of Louisiana, Third Circuit.
December 23, 1998.
Writ Denied March 19, 1999.
*531 Mark Anthony Delphin, Lake Charles, Eulis Simien, Jr., Baton Rouge, for Marvin Jackson, Indiv., etc.
Gregory W. Belfour, Lake Charles, for Calcasieu Parish School Board.
Frederick Douglas Gatz, Jr., Timothy W. Basden, Lafayette, for National Union Fire Ins. Co.
Before DOUCET, Chief Judge, YELVERTON, THIBODEAUX, SAUNDERS and SULLIVAN, Judges.
YELVERTON, J.
This case comes to us on appeal from the trial court's grant of summary judgment in favor of Calcasieu Parish School Board and its insurer, National Union Fire Insurance Company of Louisiana. The court decided that the school board did not have an off-campus duty to protect a nine-year-old child who was hit by a car while crossing an unguarded intersection on her way home from school following an after-school extracurricular activity. We affirm.
On November 1, 1995, Santana Brown, a fourth-grade student at T.H. Watkins Elementary School in Lake Charles, was struck by a vehicle driven by Jack Colvin while she was attempting to cross Highway 14, a four-lane busy highway, in order to get to her home. Santana had stayed after school to practice with the Tigerette Drill Team, an after-school activity under the direction of Carmen Williams, a teacher. The regular school day ended at 2:40 p.m. The child left the school around 3:40 p.m., following the drill team's practice, to walk home, and the accident occurred an estimated ten minutes later. Santana sustained serious injuries as a result of this accident.
The suit was brought by Marvin Jackson, as Tutor, on behalf of Santana, against three defendants: Jack Colvin, the Calcasieu Parish School Board, and the school board's insurer, National Union Fire Insurance Company. Jack Colvin, the driver of the car that hit Santana, was dismissed. Jackson alleged that the school board was negligent in its supervision of students following after-school activities and in releasing students from these activities to walk home alone after the school crossing guards at Highway 14 had left their posts.
The following summary judgment evidence was presented. Barbara George, who handled the school crossing guard program for the Calcasieu Parish Sheriff's Department, testified that the sheriff provided guards but the school boards were in charge of choosing the locations where crossing guards would be stationed. The school crossing guard and the principal of each school then determined the regular hours that the guard would be on duty. This Highway 14 crossing was a place designated for guards. However, Ms. George testified that there were no guards on duty beyond 3:30 p.m. No one had ever requested that the guards stay later than the prescribed times. There were no crossing guards present when this accident took place.
Loretta Brown, Santana's grandmother, with whom the child was living at the time of the accident, gave a deposition. Ms. Brown believed she was Santana's adoptive mother. She was surely her guardian. Ms. Brown could not drive, and she testified that she told Santana to walk home that day. The usual way Santana got to and from school was walking whether it was a practice day or not. Highway 14 was between her house and the school. Ms. Brown never met Santana at Highway 14 nor did she send anybody to meet her near this area. She never relied on the presence of a crossing guard as she admitted that she "didn't know" whether a crossing guard was present at the Highway *532 14 intersection after practice. Santana usually walked with a group which other evidence revealed consisted of five or six students.
Ms. Brown allowed Santana to participate in the Tigerette's drill practice which required the child' to stay after school three days a week. Ms. Brown remembered that, on the day of the accident, it had rained, and Santana called her at home, following practice, and asked her if anyone was available to pick her up. Her testimony was as follows:
Q: What did you tell Santana when she called and asked you on November 1st if there was anyone that could go pick her up?
A: I told her no.
Q: What did you tell her to do?
A: I told her to come on and be careful.
Q: You told her to walk?
A: And be careful.
There is no dispute that Ms. Brown told the child to walk home that day.
Carmen Williams was the sponsor and teacher in charge of the Tigerette's drill team. Her deposition confirmed that Santana called her grandmother after practice to see if a ride home was available and that Santana told Ms. Williams she was to walk home. The testimony of Ms. Williams and Ms. Brown differs only with respect to whether a second phone call was made. Ms. Williams testified that she had Santana call her grandmother again so Ms. Williams could speak personally with Ms. Brown and confirm that Ms. Brown wanted Santana to walk home. According to Ms. Williams, Ms. Brown assured Ms. Williams that she wanted Santana to walk home. Ms. Brown, on the other hand, could not recall a second conversation taking place. In reply to the question of whether she spoke with Ms. Williams on the phone that day, Ms. Brown stated, "I can't remember talking to her." Ms. Brown, however, stated that she authorized and directed Santana to walk home. Ms. Williams further testified that, during the phone conversation with Ms. Brown, she informed her that the other children who were walking home had already left. Those who crossed Highway 14 usually stayed together. In her conversation with Santana, Ms. Brown did not inquire whether Santana would be walking in a group or alone and did not make that factor a condition of her departure from the school. She did instruct Santana to be careful.
Ms. Williams and the school had guidelines in effect for the children's safety. A permission slip, which Ms. Brown was "sure she signed," was sent home to the parents informing them of the practice times and the importance of picking up their children on time. There was an established rule that if a parent failed to pick up his or her child on time more than three times, the child would be dropped from the team. Ms. Brown signed the permission slip. In compliance with these practices, Ms. Williams was responsible for supervising the children after school until they left the school premises.
We are faced with the question of whether the school board had a duty of supervision over Santana Brown after she left the campus to walk home. Stated another way, does the school board owe a duty to insure the safety of a child who walks home from school?

LAW & DISCUSSION
We review summary judgments de novo. Jones v. Doe, 95-1298 (La.App. 3 Cir. 4/24/96); 673 So.2d 1163. Where there are no genuine issues of material fact in dispute, and the mover is entitled to judgment as a matter of law, a motion for summary judgment should be granted. La.Code Civ.P. art. 966(C). The summary judgment law has been amended to overrule cases inconsistent with Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96); 685 So.2d 691, writ denied, 97-0281 (La.3/14/97); 690 So.2d 41. Phillips Petroleum v. Liberty Services, 97-758 (La. App. 3 Cir. 12/10/97); 704 So.2d 890. In *533 Hayes we stated that once the movant has presented a prima facie case for granting the motion for summary judgment, the burden shifts to the non-mover to present evidence demonstrating that material fact issues remain. The new amendment to the summary judgment law increases the burden upon the non-moving party to establish an essential element of his claim for which he will bear the burden of proof at trial. Kumpe v. State, 97-386 (La.App. 3 Cir. 10/8/97); 701 So.2d 498, writ denied, 98-0050 (La.3/13/98); 712 So.2d 882. Summary judgment must be rendered forthwith if the summary judgment evidence shows that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. Article 966(B).
In the present case there is but one disputed fact. It is whether Ms. Williams called Ms. Brown back to confirm that she had instructed her child to walk home. Whether this second phone call was made is not a material fact issue as Ms. Brown stated several times that she talked to her granddaughter and instructed her to walk home. Therefore, the material facts are not disputed. What is before us is a question of law.
Duty is an element of the duty-risk analysis. Whether a duty is owed is a question of law. Blackwell v. St. Romain Oil Co., 94-917 (La.App. 3 Cir. 3/1/95); 651 So.2d 441. The duty of a school board to supervise children during school hours has been articulated many times. In Gary v. Meche, 626 So.2d 901 (La.App. 3 Cir.1993), this circuit agreed with Comeaux v. Commercial Union Insurance Company, 269 So.2d 500, 502 (La.App. 4 Cir.1972) that the duty owed is "[r]easonable competent supervision commensurate with the age of the child and the attendant circumstances...." School boards are not the insurers of the lives or safety of children. Prier v. Horace Mann Ins. Co., 351 So.2d 265 (La.App. 3 Cir.), writs denied, 352 So.2d 1042, 1045 (La.1977). The liability of the school board and its employees for injuries to students exists only when the school board has actual custody of the students entrusted to their care. Cavalier, et al. v. Gary Brent Ward, et al., 97-1927 (La.App. 1 Cir. 9/25/98); 723 So.2d 480. The duty of reasonable supervision is generally always present when a child is on campus during regular school hours, the standard being care commensurate with the age of the children under the attendant circumstances. Adams v. Caddo Parish School Bd., 25,370 (La.App. 2 Cir. 1/19/94); 631 So.2d 70, writ denied, 94-0684 (La.4/29/94); 637 So.2d 466. Supervision is also required for children who are waiting on the grounds for a school bus. Nash v. Rapides Parish School Board, 188 So.2d 508 (La.App. 3 Cir.1966). The duty is owed when a child is participating in an after-hours activity sanctioned by the board. Augustus v. Joseph A. Craig Elem. School, 459 So.2d 665 (La.App. 4 Cir.1984). The duty of supervision and its custodial limitations can be found in "field trip" cases such as Oxner v. Reeves, 153 So.2d 565 (La.App. 3 Cir.), writ denied, 244 La. 899, 154 So.2d 768 (La.1963); Bell v. USAA Cas. Ins. Co., 30, 172 (La.App. 2 Cir. 1/21/98); 707 So.2d 102, writ denied, 98-0712 (La.5/8/98), 718 So.2d 433; and Glankler v. Rapides Parish School Bd., 610 So.2d 1020 (La.App. 3 Cir.1992), writ denied, 614 So.2d 78 (La.1993). When the school board provides bus transportation for the student, the duty of care and supervision extends temporally and spatially throughout this custodial relationship, as in Dunn v. Gentry, 94-1164 (La.App. 3 Cir. 4/5/95); 653 So.2d 783, writ denied, 95-1148 (La.6/16/95); 655 So.2d 335.
There are situations where a school board may be responsible for negligence occurring during school hours or activities which result in injury off the school grounds. In Sutton v. Duplessis, 584 So.2d 362 (La.App. 4 Cir.1991), the school board was found liable for failure to adequately supervise a six-year-old boy whose parents had failed to pick him up after early dismissal. The child left the school's *534 office, where he was told to remain, and was struck by a car while crossing the street. The court placed liability on the school board because the child, while still in the custody of school personnel, was allowed to leave school unnoticed by any school authority. There was a total absence of necessary supervision. The facts in Gary, 626 So.2d 901, present another example where the transition from school board custody to parental custody had not taken place. A six-year-old child, when school let out at 3:00 p.m., ran out into the street right in front of the school without waiting for her mother, who normally picked her up. The child was injured by a moving car. In imposing liability on the school board, the court found that the school board failed to present any evidence of a supervision policy once classes were dismissed. There was no one on duty in the school yard at dismissal, a critical time to ensure that students safely reached their buses or their parents' vehicles. Although the child was off-campus, the accident occurred immediately following and as a result of the child's unsupervised departure from the school grounds.
Unless a school board provides transportation for a child there is no custodial relationship and therefore no duty of supervision to and from school. La.R.S. 17:158 authorizes a school board to provide free transportation for students residing more than one mile from the school they attend. School boards are not authorized to provide transportation for students residing within one mile of their school. Santana resided within a mile of her school. A school board in these circumstances is not responsible for students who walk to and from school. The duty of supervision does not apply before or after school hours and off school property.
There are times, nevertheless, when school boards, although not responsible for the entire walking route of students to and from school, have voluntarily assumed a duty to provide crossing guards at certain places. In Barnes v. Bott, 615 So.2d 1337 (La.App. 4 Cir.), writ denied, 619 So.2d 546 (La.1993), a six-year-old child was hit by a car while crossing an unguarded intersection on his way home from school. Guards were usually posted at the intersection. The crossing guard had failed to show up. The school board's policy in such cases was to either warn the students that no guard would be present or find a substitute guard. In this case the school did neither. The court of appeal held that when a school board provided a crossing guard at a particular crossing, it assumed the duty of verifying the presence of the guard "during her normal duty hours." Barnes, 615 So.2d at 1341. The court of appeal found a breach of the school board's duty in not finding a substitute guard or warning the students that no guard would be present.
In the present case the school board provided crossing guards at the Highway 14 crossing, but only for the benefit of the main student body after school, not for students following after-school activities. The crossing guards were available regularly until 3:30 p.m., but they had left their post by the time Santana walked home.
There are no cases which place a duty on a school board to provide crossing guards. The only jurisprudential duty recognized is that described in Barnes, 615 So.2d 1337, when a school board has voluntarily assumed a duty to provide guards at certain places. Where a school board has voluntarily undertaken to provide crossing guards, the duty does not extend beyond a reasonable time. In Johnson v. Ouachita Parish Police Jury, 377 So.2d 397 (La. App. 2 Cir.), writ denied, 378 So.2d 1375 (La.1979), a seven-year-old child was killed by an approaching vehicle as he walked to school at 8:14 a.m. School began at 8:00 a.m. The court found that the school board's duty to provide crossing guards, if any existed, terminated prior to the accident.
The policy of the school board in the present case of posting guards at *535 Highway 14 until 3:30 p.m., which was for almost an hour after school let out, was not unreasonably short considering that the crossing was less than a mile from the school. We find that the school board was under no duty to post guards at that intersection for students who stayed on campus after regular school hours for extracurricular activities.
The appellant argues that Ms. Williams (and through her, the school board) was negligent in allowing Santana to leave the school alone and not in her usual group of five or six students. We have found no cases placing on school boards a duty to make group travel a requirement on students who walk to and from school, and we will not fashion such a duty for this case. Whatever control a school board might initially have in requiring group travel would end the moment the group left the campus. When the group left the campus, it would be free to disperse on its own, and it would naturally disperse as walking members reached their respective homes. Moreover, no evidence was offered to support the theory that there exists traffic "safety in numbers" especially for such a small group. Because in the group there were both older and younger students than Santana, it cannot be said she would benefit from the presence of more mature companions, any more than she would be burdened by her responsibility over less mature children in such a group arrangement. Also, her parental custodian was not even aware of the place where she crossed Highway 14 or the identities of the persons with whom the child walked. It would be an unreasonable burden of supervision on school authorities to impose such a duty, and we decline to do so.
Ms. Williams, as a teacher and supervisor of over 40 girls, acted prudently in this case considering the circumstances that confronted her. Santana's grandmother, unable to pick Santana up, told the child to walk home as usual. Considering the fact that Santana was nine years old and in the fourth grade, we cannot say that Ms. Williams made a wrong decision by sending the child on her way. She knew that the child routinely walked home. Her supervisory duties terminated once the child safely left the campus and came under the authority and control of her grandmother. Prevention of this accident was not within the scope of the duty owed by the school board.
For these reasons, we affirm the summary judgment in favor of Calcasieu Parish School Board. We further affirm the motion for summary judgment in favor of the school board's insurer National Union Fire Insurance Company of Louisiana. Appellant will pay costs.
AFFIRMED.
THIBODEAUX, J., dissents and assigns written reasons.
SAUNDERS, J., dissents and assigns written reasons.
THIBODEAUX, J., dissenting.
The majority permits a school board to abdicate its responsibility of reasonable supervision of a student who walks home after an extracurricular function. That is unfortunate and erroneous.
The majority recognizes that a duty does exist. It cites unchallenged jurisprudence which strongly establishes this obligation. Yet, it frames the issue and the conclusion flowing from a consideration of that issue to absolutely absolve a school board from its recognized duty when a child's supervision is transferred to another custodian which, in this case, was a disputed fact.
I am uncertain whether this case was seen as a "duty" case or a "legal cause" case because of the phrase. "scope of the duty" used by the majority. The conclusion seems to indicate that a particular defendant. Calcasieu Parish School Board, did not have a duty to protect this nine-year old student against the risk that occurred under the circumstances of the *536 occurrence. However, the rationale focuses on the duty element in the "duty/risk" analysis. Either analysis would, in my view, be unavailing to the school board.
Duty is a question of law. Whether one party owes a duty to another depends on the facts and circumstances of the case and on the relationship of the parties. It is determined on a case-by-case basis. Hopkins v. Sovereign Fire & Cas. Ins. Co., 626 So.2d 880 (La.App. 3 Cir.1993); Keys v. Broussard, 96-1379 (La.App. 3 Cir. 3/5/97); 692 So.2d 596; Francisco v. Joan of Arc Co., 96-1385 (La.App. 3 Cir. 3/5/97); 692 So.2d 598. This concept is particularly relevant in this case because of the age of the child and the facts known to the teacher at the time she allowed the child to walk home unattended. It is not sufficient to say that the child always walked to and from school. During the regular school hours, school crossing guards were provided until 3:30 p.m. The accident occurred about one hour later. Thus, at the time the child walked to school and back home, assuming it was during regular school hours, school crossing guards were available to assist the child at the busy intersection.
We should rely Gary On Behalf of Gary v. Meche, 626 So.2d 901 (La.App. 3 Cir. 1993) and reverse. In Gary, a six-year old child was injured while going home from school. The child lived directly across the street from the school. The child's departure from the school grounds was unsupervised, as in this case. In Gary, the trial court said that "[i]t is the responsibility of the parents to see that their children arrive home safely." The third circuit reversed. In reversing, we stated that:
the well-established principle in this state is that a school board has the duty to provide reasonable care commensurate with the risks incurred by the children in its custody. See, for example, Johnson v. Ouachita Parish Police Jury, 353 So.2d 1114 (La.App. 2d Cir. 1977).
The duty to supervise children has been articulated numerous times. In Comeaux v. Commercial Union Ins. Co., 269 So.2d 500 (La.App. 4th Cir.1972), the court stated, "Reasonable, competent supervision commensurate with the age of the child and the attendant circumstances is sufficient." 269 So.2d at 502. In Drueding v. St. Paul Fire & Marine Ins. Co., 482 So.2d 83 (La.App. 4th Cir.1986), the same court explained:
Also well established in school-related accident cases is the rule that supervising teachers must follow a reasonable standard of care commensurate with the age of the children under the attendant circumstances, and liability is imposed only where there is a causal connection between the lack of supervision and the accident that could have been avoided by the exercise of the required degree of supervision. [Citations omitted.] Where a child is exposed to an unreasonable risk of harm and suffers injury, liability will result. [Citations omitted.]
Id. at 903 (footnote omitted).
Gary also stated that, in referring to other jurisprudence, a school board's duty to reasonably supervise young students is not restricted to school hours, and that school boards must have a policy to ensure that young children do not leave the school unattended.
How far should the school board duty extend? What should the teacher have done? There are several things that the teacher could have done, but I do not think that it is appropriate for us to answer this question. Gary answered this question by saying that:
In reaching [our] conclusion, we need not determine the appropriate method of supervision, for that is not within our province. Rather, we simply hold, as did the fourth circuit in the Sutton case, that the School Board has a duty to provide reasonable supervision commensurate with the age of the children under the attendant circumstances. Specifically, *537 the school must have a policy to ensure that young children ... do not leave the school unattended.
Id. at 905.
Is a school board responsible for students who reside beyond one mile of their school but who, because of extracurricular activities, have to walk home? The majority's decision would presumably exculpate a school board from responsibility. Suppose the child in this case was six years old as in Gary? Would a school board be under a duty? The majority appears to frame an absolute and unqualified lack of duty on the part of the school board. In other words, the school board never owes a duty to a child who walks home, regardless of the circumstances. In this case, the grandmother allegedly instructed the child to walk home. Did this alleged transfer of authority serve to vitiate the duty of the school board under the circumstances of this case? I do not think so.
The child's teacher knew that her friends had already left the school's premises when the nine-year old called her grandmother. She knew that the highway which the child had to cross, Highway 14, was a busy, four-lane thoroughfare. She knew that school crossing guards were not present at that time. She knew that it was safer for children to walk in a group. Yet, she allowed the minor child's friends to leave while the minor child was calling her grandmother.
In discussing the law on summary judgment, the majority makes the observation that once the movant has presented a prima facie case, the burden shifts to the non-mover. It also concludes that the new amendment increases the burden upon the non-moving party to establish an essential element of his claim for which he will bear the burden of proof at trial. It does not say what burden shifts to the non-mover. It is important to distinguish between the burden of production and the burden of persuasion. The non-moving party simply has to produce evidence from which a reasonable jury could, not would, conclude in his favor. He does not have to prove his case at the hearing on the motion for summary judgment. Furthermore, the new summary judgment law does not increase the burden on the non-moving party. The burden under subsection 966(C)(2) always remains with the movant. The new amendments represent an attitudinal change, not a change in the burden of proof. See David W. Robertson, "Summary Judgment and Burden of Proof: Effects of the 1996 Amendment," 45 La. Bar Journal 4 (1997).
For the foregoing reasons, I respectfully dissent.
SAUNDERS, J., Dissenting.
The record suggests that the sheriff supplies deputies to police the crossing of Highway 14 and that, had the school board requested the guards to stay until extracurricular activities were completed, this could have been easily accomplished. The record on this point is sketchy at best and, in my view, does not support the granting of a summary judgment.
Therefore, I respectfully dissent.