802 So.2d 19 (2001)
D.C.
v.
ST. LANDRY PARISH SCHOOL BOARD, et al.
No. 00 01304-CA.
Court of Appeal of Louisiana, Third Circuit.
March 7, 2001.
Writ Denied May 25, 2001.
*20 Daniel G. Brenner, Bolen, Parker, & Brenner, Ltd., Alexandria, LA, Counsel for St. Landry Parish School Board, Robert Morrison, Ryan Hooks, Earline Guilbeau.
John B. Seeling, Harris Law Firm, Alexandria, LA, Counsel for D.C.
Court composed of DOUCET, C.J., PETERS, and AMY, Judges.
PETERS, Judge.
The plaintiff, D.C.,[1] brought this suit individually and as tutor of his minor daughter, K.C., to recover the damages arising from an incident which occurred when K.C. attempted to walk home from East Junior High School in Opelousas, Louisiana, on September 5, 1996. D.C. named as defendants the St. Landry Parish School Board; Robert Morrison, the principal of East Junior High School; Ryan Hooks, the vice-principal at East Junior High School; Earline Guilbeau, a secretary at East Junior High School; and *21 Neil Mark Lewis, a man who sexually molested K.C. on that day. After trial, the trial court rendered a $20,405.00 judgment in favor of D.C. and K.C., and all of the defendants except Mr. Lewis appealed that judgment. D.C. answered the appeal, seeking an increase in K.C.'s general damage award. For the following reasons, we affirm the trial court's judgment in all respects.

DISCUSSION OF THE RECORD
The basic facts are not in dispute. On September 5, 1996, K.C. was a twelve-year-old seventh grade student residing with her father and two brothers in Opelousas, and attending East Junior High School in that city. The school year had just begun, and K.C. was in her first year at the school. That morning, as K.C. entered school, she encountered Mr. Hooks, who informed her that her skirt was too short and violated the school dress code. Mr. Hooks instructed her to go to the office and call someone to bring her some acceptable clothes. She promptly went to the office and related Mr. Hooks' instructions to Ms. Guilbeau, the office secretary. Ms. Guilbeau allowed her to use the office telephone to call home.
K.C. called home and spoke to her then eighteen-year-old brother, R.C.,[2] who told her he did not have transportation to the school and, therefore, could not bring her any clothing. After completing the telephone conversation, K.C. informed Ms. Guilbeau that to obtain appropriate clothing, she would have to go home and change. According to K.C., Ms. Guilbeau pushed the check-out sheet toward her and told her to "sign out." The check-out sheet reflects that she signed out at 7:59 a.m. As she walked along the street toward her home, she encountered Neil Mark Lewis, who sexually molested her. The incident occurred approximately eight blocks from the school campus.
The trial court concluded that all of the defendants were liable in solido for the damages suffered by D.C. and K.C., awarded D.C. $405.00 in medical expenses incurred, and awarded K.C. $20,000.00 in general damages. In their appeal, the defendants assert that the trial court erred in finding that: (1) the defendants' duty of reasonable supervision owed to K.C. extended to an act of indecent behavior with a juvenile which occurred approximately eight blocks away from campus; (2) the actions of the school board resulted in a breach of the duty of reasonable supervision; and (3) awarding $20,000.00 for K.C.'s general damages.

OPINION

Assignments of Error Numbers 1 and 2
It is well settled that questions of liability for negligent acts are evaluated using a duty-risk analysis. Daye v. General Motors Corp., 97-1653 (La.9/9/98); 720 So.2d 654. Under the duty-risk approach, the "[p]laintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of protection afforded by the duty breached." Id. at 659.
The cause-in-fact element is not at issue in this appeal. In determining whether this element of proof has been satisfied, "[t]he inquiry to be made is whether the accident would have occurred *22 but for the defendant's alleged substandard conduct." Id. Clearly, K.C. would not have been sexually molested had she not been allowed to leave the junior high school campus. Additionally, the defendants do not contest the fact that school boards, through their school personnel, "must reasonably supervise the young children in [their] care." Gary v. Meche, 626 So.2d 901, 904 (La.App. 3 Cir.1993). They dispute the trial court's determination of the scope of that duty.
Whether a duty exists is a question of law, while breach of duty is a question of fact. Mundy v. Dept. of Health & Human Resources, 620 So.2d 811 (La.1993). While no deference is given to the trial court's determination of a question of law, findings of fact are subject to the manifest error standard of review. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). "Generally, breach of a duty is the failure to exercise reasonable care under the circumstances." FRANK L. MARAIST & THOMAS C. GALLIGAN, LOUISIANA TORT LAW § 6-1, at 139 (1996).
In support of their position that they neither owed, nor breached a duty to K.C., the defendants direct our attention to Jackson v. Colvin, 98-182 (La.App. 3 Cir. 12/23/98); 732 So.2d 530. In that case, this court concluded that a school board's supervisory duty did not extend to a nine-year-old student who was struck by an automobile when walking home from school after attending an after-school extracurricular activity. In reaching that conclusion, this court stated that "[s]chool boards are not the insurers of the lives or safety of children," and that the standard of care to be applied depends on the age of the children at issue and the surrounding circumstances. Id. at 533. We find that Jackson is easily distinguishable from the case before us.
Both Mr. Morrison and Mr. Hooks testified that allowing K.C. to check herself out violated school policy. Mr. Morrison testified that, at the least, school policy required that some contact be made by school personnel with a child's parent before the child could leave campus. In a situation where a parent could not be contacted, the proper thing to do would be to have the child remain in the office or return to class until such contact could be made. Mr. Hooks testified that he expected K.C. to obtain clothes from home, and that he sent her to the office, not home. He confirmed Mr. Morrison's testimony that school policy required parental approval for a child to check out of school, and that approval required a direct contact by either the principal or vice-principal with the parent giving permission. In fact, when he left his duty post to return to his office, he expected to see K.C. sitting in his outer office awaiting her clothes. When he did not see her, he made no further inquiries because he assumed she had been sent to class.
Although she allowed K.C. to leave, Ms. Guilbeau testified that her departure was improper under the circumstances. Her only explanation for her action in allowing K.C. to leave was that she perceived K.C.'s predicament to be disciplinary in nature and she [Ms. Guilbeau] did not involve herself in school disciplinary problems. She acknowledged that K.C.'s telephone conversation with her brother did not rise to the level of justifying her departure from campus, yet she still allowed K.C. to check out without additional authorization. Ms. Guilbeau simply did not consider K.C. to be her responsibility under these circumstances, but she did acknowledge that school policy granted only the principal or vice-principal authority to allow a child to leave the campus.
*23 While the court in Jackson found no duty for after-school, off-campus incidents, we also concluded that "[t]he duty of reasonable supervision is generally always present when a child is on campus during regular school hours." Id. Certainly, included within that duty of reasonable supervision is the duty to make the appropriate supervisory decisions concerning a student's departure from campus during regular school hours. The defendants had such a policy in place and breached their duty to K.C. by violating their own policy.
Having concluded that the trial court did not err in concluding that the defendants breached their reasonable supervision duty owed K.C., we also conclude that the trial court did not err in finding that the duty extended to the risk that K.C. might be molested after leaving campus. The defendants' reliance on Jackson in this case is misplaced. In Jackson, this court made it clear that "[t]here are situations where a school board may be responsible for negligence occurring during school hours or activities which result in injury off the school grounds." Id.
It is clear that the injury to K.C. occurred during school hours and, therefore, at a time when K.C.'s actual custody was entrusted to the defendants. K.C. was required to walk through an area of Opelousas described in the record as "the Hill" and known for illicit drug and other activity. Specifically, this was an area acknowledged by Mr. Morrison, Mr. Hooks, and Ms. Guilbeau as one they would not want their own daughter traversing alone. As recognized by the trial court, no one testified that "they would have allowed their twelve year old daughter to walk the streets or any street in this parish at 8 o'clock by herself, most [sic] less walk the streets in front of the Charcoal Lounge."
Applying the rationale of Jackson, and considering K.C.'s age and the circumstances surrounding her injury, we find that a causal connection exists between her lack of supervision and the incident giving rise to her injury. We further find that the incident would not have occurred but for the absence of the appropriate degree of care and supervision required under the facts of the case at bar. See Drueding v. St. Paul Fire and Marine Ins. Co., 482 So.2d 83 (La.App. 4 Cir.1986). See also Gary, 626 So.2d 901. Therefore, the trial court did not err in determining that the scope of the defendants' supervision duty encompassed the foreseeable risk that a twelve-year-old female who leaves campus and walks through the area of Opelousas at issue may fall victim to one of the nefarious criminals that often frequents such an area at a time when those streets are normally clear of junior high school students. We find no merit in the defendants' first and second assignments of error.

Assignment of Error No.3 and Answer to Appeal
K.C. suffered emotional injuries from the incident and received treatment from Dr. Ronald S. Pryer, a Pineville, Louisiana clinical psychologist. Dr. Pryer saw K.C. on four occasions in 1996 (September 26, October 8, October 14, and October 24). Initially, K.C. related to Dr. Pryer that she was having nightmares about the incident and had been dreaming about her dead mother. Further, her classmates had learned of the incident and began to tease her unmercifully. Dr. Pryer stated that this teasing caused K.C. "a great deal of concern." According to Dr. Pryer, K.C. told him that she wished she were dead and expressed a need to escape her embarrassment. Dr. Pryer observed that, at this time, K.C. was "very dependent and clinging on her father." Dr. Pryer concluded *24 that K.C. was "mildly depressed and moderately anxious." He noted that K.C.'s ability to adjust to her situation following the incident had been lowered and that "her impairment in social relations [was] directly related to the incident at school that has been so grossly enforced by her classmates."
According to Dr. Pryer, on the October 8 visit, K.C. was still "very angry and depressed" and had "thought about suicide on several occasions" since the time of the incident. She related to Dr. Pryer that she was having difficulty relating to her brothers, her classmates, and her teachers. By that time, she even harbored thoughts of revenge toward her attacker.
Dr. Pryer testified that, by the October 14 visit, K.C. was "still showing considerable signs of anxiety," was dreaming about the incident and was still "thinking about it on a regular basis." Dr. Pryer noted that the children at school were still teasing her. However, on the October 24 visit, Dr. Pryer concluded that K.C. "had improved quite a bit" and could not "be expected to suffer any long term psychological problems as a result of this incident."
Dr. Pryer related all of K.C.'s psychological difficulties to the September 5, 1996 incident, and the record contains no evidence contradicting this conclusion. The event that seemed to have contributed to K.C.'s recovery more than any other was her family's move to a new city and her enrollment in a new school where her classmates were not familiar with her prior misfortune.
In Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), the supreme court noted that "the discretion vested in the trier of fact is `great,' and even vast, so that an appellate court should rarely disturb an award of general damages." Under Youn and its progeny, the "initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the `much discretion' of the trier of fact." Youn, 623 So.2d at 1260.
K.C. suffered a devastating emotional trauma because of the September 5, 1996 incident. She was required to further suffer the trauma of having to revisit the experience through her testimony at Mr. Lewis's trial. Her classmates teased her unmercifully, and her grades suffered. All of these factors resulted in her developing feelings of withdrawal, depression, anger, vengeance and anxiety. We conclude that the trial court did not clearly abuse its discretion in awarding $20,000.00 in general damages. Therefore, we find no merit in the defendants' third assignment of error or in the answer to the appeal.

DISPOSITION
For the foregoing reasons, we affirm the judgment of the trial court in all respects. All costs of this appeal are assessed against the St. Landry Parish School Board, Robert Morrison, Ryan Hooks and Earline Guilbeau.
AFFIRMED.
NOTES
[1] Because of the nature of the allegations and the age of the minor plaintiff, the plaintiffs and their family members will be referred to in this opinion by their initials.
[2] When she called, K.C. knew only her brother was home. D.C. is a federal postal employee and, at the time of the incident, worked out of an Alexandria, Louisiana office. K.C.'s mother, and D.C.'s former wife, is dead.