| THOMAS LAVIGNE | * | NO. 2018-CA-0066 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| ALLIED SHIPYARD, INC., | * | |
| RONALD L. CALLAIS, THE | | FOURTH CIRCUIT |
| GRAY INSURANCE | * | |
| COMPANY, INC., D/B/A GRAY | | STATE OF LOUISIANA |
| & COMPANY, INC., ANNE | * * * * * * * | |
| PAIGE LOWENBURG, AND | | |
| PROGRESSIVE INSURANCE | | |
| COMPANY | | |

CONSOLIDATED WITH:                    CONSOLIDATED WITH:

THOMAS LAVIGNE                        NO. 2018-CA-1077

VERSUS

ALLIED SHIPYARD, INC.,
RONALD L. CALLAIS, THE
GRAY INSURANCE COMPANY,
INC., D/B/A GRAY & COMPANY,
INC., ANNE PAIGE
LOWENBURG, AND
PROGRESSIVE INSURANCE
COMPANY

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2013-03795, DIVISION "M"
Honorable Paulette R. Irons, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Chief Judge James F. McKay, III, Judge Terri F. Love, Judge
Dale N. Atkins)

James M. Williams
Erin B. Rigsby
Inemesit U. O'Boyle
CHEHARDY SHERMAN WILLIAMS MURRAY RECILE STAKELUM &
HAYES, LLP
One Galleria Boulevard, Suite 1100
Metairie, LA 70001

Robert E. Jones, IV
JONES & WILLIAMS, LLC
7544 Daniel Drive
New Orleans, LA 70127

COUNSEL FOR PLAINTIFF/APPELLEE

S. Daniel Meeks
Phyllis E. Glazer
Kristen E. Meeks
MEEKS & ASSOCIATES, LLC
3401 West Esplanade Ave. South, Suite 3
Metairie, LA 70002

COUNSEL FOR DEFENDANTS/APPELLANTS

**AFFIRMED**

**JANUARY 15, 2020**

This is a tort case involving a three-vehicle collision. This appeal arises from the trial court's judgment awarding Appellee, Thomas Lavigne, damages against Gray Insurance Company ("Gray Insurance") and Ronald Callais (collectively, the "Appellants"). Gray Insurance also appeals the trial court's denial of their motion to disqualify Mr. Lavigne's counsel. For the reasons that follow, we affirm.

**FACTS**

On the afternoon of April 22, 2012, Mr. Thomas Lavigne was involved in a motor vehicle collision with Ronald Callais and Anne Lowenburg at the intersection of Magazine and Delachaise Streets in New Orleans, Louisiana. Mr. Lavigne was traveling toward downtown and was stopped in the eastbound lane on Magazine Street at the intersection of Delachaise Street, leaving space between his car and the car in front of him to allow traffic to pass on Delachaise Street. Ms. Lowenburg turned right from Louisiana Avenue onto Magazine Street headed westbound, and accelerated to approximately fifteen to twenty miles per hour. Mr. Callais was on Delachaise Street going northbound attempting to make a left turn onto Magazine Street. He inched across the eastbound lane in front of Mr. Lavigne's vehicle and struck Ms. Lowenburg's vehicle on the driver's side door as

she passed the intersection on Delachaise Street while traveling in the westbound lane on Magazine Street. Ms. Lowenburg then lost control of her vehicle and veered left, striking Mr. Lavigne's vehicle.

Before the accident, Mr. Lavigne was employed as the dean of students at Marrero Middle School, making approximately $72,000 per year. After the accident, Mr. Lavigne suffered a great deal of pain. Feeling that he could no longer physically perform the duties of his job, Mr. Lavigne accepted a job as an assistant college football coach at Arkansas Baptist College in Little Rock, Arkansas, making approximately $55,000 per year. Mr. Lavigne also sought medical treatment from multiple physicians. He was diagnosed with, among other things, herniated discs. Both of Mr. Lavigne's treating physicians, Dr. Bradley Bartholomew and Dr. Rand Voorhies, concluded that Mr. Lavigne would need to undergo back or neck surgery to treat his injuries[1].

## PROCEDURAL BACKGROUND

On April 19, 2013, Mr. Lavigne filed a petition for damages in Orleans Parish Civil District Court. He named the following defendants: Mr. Callais; Ms. Lowenburg; Allied Shipyard, Inc. ("Allied") (Mr. Callais' employer and the owner of the vehicle he was driving), Gray Insurance (Allied's motor vehicle insurance provider), and Progressive Insurance Company ("Progressive") (Ms. Lowenburg's motor vehicle insurance provider).

On December 10, 2015, Mr. Lavigne filed a witness list, naming, among others, the following witnesses: (1) Dr. Shelly Savant, whom Mr. Lavigne identified as an expert life care planner; (2) Dr. Jeremy Cummings, whom Mr. Lavigne identified as an expert in accident reconstruction and biomechanical

---

[1] The physicians recommended different procedures for Mr. Lavigne.

engineering; (3) Dr. Cornelius Gorman, whom Mr. Lavigne identified as a medical cost expert; (4) Joyce Beckwith, whom Mr. Lavigne identified as an expert in vocational rehabilitation; and (5) Dr. Bartholomew, one of Mr. Lavigne's treating physicians.

On March 9, 2016, the Appellants filed pretrial motions challenging the expert testimony and methodologies of Dr. Savant, Dr. Gorman, Ms. Beckwith, and Dr. Cummings (the "*Daubert* Motions"). On August 31, 2017, a hearing on the *Daubert* motions was held for Dr. Savant, Dr. Gorman, and Dr. Cummings. At the conclusion of the hearing, the trial court held that Dr. Savant, Dr. Gorman, and Dr. Cummings[2] could testify as experts in the fields of life care planning, vocational rehabilitation and medical costs, and accident reconstruction and biomechanical engineering, respectively.

On January 26, 2017, eight months before trial, Mr. Lavigne's trial counsel withdrew. James Williams ("Mr. Lavigne's counsel"), a partner in Chehardy, Sherman, Williams, Murray, Recile, Stakelum & Hayes, LLC ("CSW"), enrolled.

---

[2] On appeal, Appellants assert that, at the conclusion of the *Daubert* hearing for Dr. Cummings that began on August 31, 2017, the trial court ruled Dr. Cummings could not testify as an expert in biomechanical engineering. Then, according to Appellants, after counsel for Mr. Lavigne held an improper *ex parte* conversation with the law clerk for the trial court, a second "surprise" hearing for Dr. Cummings was held on September 25, 2017, the first day of trial, and that this hearing violates La. C.C.P. art. 1425 because the second hearing was held less than thirty days prior to trial. Based on this Court's review of the record, we do not find that there was a second *Daubert* hearing held for Dr. Cummings; the hearing held on September 25, 2017 was merely a continuation of the *Daubert* hearing for Dr. Cummings that began on August 31, 2017. At the conclusion of the August 31, 2017 hearing, the trial court instructed Mr. Lavigne's counsel to schedule another date to present more evidence on Dr. Cummings' methodology, to which Appellants lodged no objection. Because there was no objection to the timing under La. C.C.P. 1425 for the continuation of the hearing—or indeed to the hearing beginning on August 31, 2017, which was also less than thirty days prior to trial—we find that Appellants waived their ability to assert this issue on appeal.

At that time, another partner at CSW, Charles O. Taylor, was representing Gray Insurance in an unrelated matter.[3]

A two-week jury trial on the merits commenced on September 25, 2017, and concluded on October 6, 2017.[4] At the conclusion of trial, the jury found for Mr. Lavigne, that Mr. Callais was one hundred percent at fault for the accident, that Ms. Lowenburg was zero percent at fault, and awarded the following damages:

| Past Medical Expenses: | $23,117.54 |
|---|---|
| Future Medical Expenses: | $580,000.00 |
| Past Lost Wages: | $55,842.00 |
| Loss of Earning Capacity/Future Wages | $152,946.00 |
| Past Physical Pain and Suffering: | $400,000.00 |
| Future Physical Pain and Suffering: | $250,000.00 |
| Past Mental Anguish: | $300,000.00 |
| Future Mental Anguish: | $400,000.00 |
| Past Loss of Enjoyment of Life: | $200,000.00 |
| Future Loss of Enjoyment of Life: | $400,000.00 |
| **TOTAL:** | **$2,761,905.54** |

On May 15, 2018, several months after trial, Gray Insurance filed a motion to disqualify Mr. Lavigne's trial counsel. Gray Insurance asserted that it had learned after trial that, as a result of Mr. Lavigne's counsel's law partner's representation of Gray Insurance, Mr. Lavigne's counsel had been burdened by a conflict of interest. A hearing on the motion was held August 30, 2018. At the hearing, Mr. Taylor provided an affidavit attesting: that when Mr. Lavigne's counsel enrolled as counsel for Mr. Lavigne, Mr. Taylor called Gray Insurance's Vice President of Legal Services; that Mr. Taylor informed Gray Insurance's Vice President of Legal Services of the conflict; that Mr. Taylor then asked Gray

---

[3] The record reflects that Gray Insurance terminated CSW as its counsel in December 2017.

[4] Prior to trial, the claims against Ms. Lowenburg and Progressive were dismissed with prejudice after settlement. At the conclusion of Appellants' case-in-chief, the trial court granted Allied's Motion for Directed Verdict, finding that no evidence had been presented to show liability and dismissing all claims with prejudice. Therefore, at the time of jury deliberations, the only remaining defendants were Mr. Callais and Gray Insurance.

4

Insurance to waive the conflict; and that Gray Insurance orally agreed to do so. The trial court denied the motion. From this ruling, as well as the jury verdict and damages award in favor of Mr. Lavigne, Appellants now timely appeal.

## DISCUSSION

Appellants' assignments of error present the following five related issues: (1) admission of expert testimony for Mr. Lavigne; (2) admission of expert testimony of Mr. Lavigne's treating physician, Dr. Bradley Bartholomew; (3) jury instructions on comparative fault, future medical expenses, and past and future lost wages; (4) prejudicial remarks by Mr. Lavigne's counsel during trial; and (5) disqualification of Mr. Lavigne's counsel.[5] We address each issue in turn.

---

[5] On appeal, the Appellants raise nine (9) assignments of error:

(1)     The Trial Judge denied Defendants their comparative fault defense by erroneously instructing the jury on the legal duties of motorists.

(2)     The Trial Judge erred by allowing Shelly Savant to testify as an expert life care planner despite finding that the methodology she employed when preparing the life care plan was invalid.

(3)     The Trial Judge violated La. C.C.P. art. 1425 and *Daubert* by failing to evaluate the methodology employed by Plaintiff's vocational rehabilitation expert and, instead, allowing Dr. Cornelius Gorman to be substituted as a new expert on the eve of trial.

(4)     The Trial Judge erred by *sua sponte* reconsidering her *Daubert* ruling on Dr. Cummings, after an *ex parte* conversation between counsel for the Plaintiff and the Judge's law clerk, and by allowing Cummings to give new, never-before-disclosed opinions and invalid biomechanical testimony at trial.

(5)     The Trial Judge erred by allowing the Plaintiff to present evidence of an examination of the Plaintiff by Dr. Bradley Bartholomew which occurred on the second day of trial despite that the Plaintiff had not been seen or treated by Bartholomew in almost three years, and further erred by allowing Dr. Savant to testify as to new opinions and conclusions she reached based on that mid-trial examination and her subsequent discussions with Bartholomew.

(6)     The legal errors in admission of expert testimony as well as erroneous jury instructions interdicted the fact finding process such that the jury erred in awarding $580,000.00 in future medical expenses to the Plaintiff.

(7)     The legal errors in admission of the testimony of Dr. Gorman as well as erroneous jury instructions interdicted the fact finding process such that the jury erred in awarding past lost wages to a Plaintiff who had missed no work and future lost wages despite the absence of medical testimony that the Plaintiff has a disability affecting his ability to earn wages.

## I. Admission of Expert Testimony of Dr. Savant, Dr. Gorman, and Dr. Cummings

The assignments of error related to the expert testimony of Dr. Savant, Dr. Gorman, Dr. Cummings, and Dr. Bartholomew pertain to evidentiary issues. "A trial court's ruling on ... evidentiary issues will not be disturbed unless a clear abuse of discretion is shown.*" Jones v. Peyton Place, Inc.*, 1995-0574, pp. 11-12 (La. App. 4 Cir. 5/22/96), 675 So.2d 754, 763; *see also Sanford v. City of New Orleans*, 2003-0883, p. 13 (La. App. 4 Cir. 1/21/04), 866 So.2d 882, 890; *Tadlock v. Taylor*, 2002-0712, p. 7 (La. App. 4 Cir. 9/24/03), 857 So.2d 20, 27. Importantly, an assignment of error cannot be predicated upon a ruling admitting evidence unless there is a timely objection to the evidence. *See* La. C.E. art. 103; *Leard v. Schenker*, 2006-1116, p. 3 (La. 6/16/06), 931 So.2d 355, 357; *Bush v. Winn-Dixie of La., Inc.*, 573 So.2d 508, 513-514 (La. App. 4 Cir.1990).

The standard for determining whether a witness is qualified to testify in a matter as an expert is governed by *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), as adopted by the Louisiana Supreme Court in *State v. Foret*, 628 So.2d 1116, 1121 (La. 1993). As this Court observed in *Hooper v. Travelers Ins. Co.,* 2010-1685 (La. App. 4 Cir. 9/28/11), 74 So.3d 1202, 1204-05, "*Daubert* set forth some non-exclusive factors for courts to consider in making a determination as to whether

---

(8)     The systematic inflammatory attacks on Gray Insurance led the jury to punish Gray Insurance by awarding a conscience shocking amount in general damages that was based on prejudice and not facts in evidence.

(9)     Throughout trial, the law firm representing the Plaintiff was also representing Gray Insurance despite the Rules of Professional Conduct prohibiting such concurrent conflicts of interest. The Trial Judge erred in declining to disqualify the plaintiff's counsel from further representation of the Plaintiff in this matter and further erred in declining to require the plaintiff's counsel to bear its own costs incurred in prosecuting this case against its own client.

an expert's testimony was relevant and reliable. Those factors include but are not limited to: (1) the testability of the technique or scientific theory; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the technique had gained 'general acceptance.'" Review of a trial court's decision to admit or exclude testimony from a witness offered as an expert is reviewed under an abuse of discretion standard. *Id.* at 1205; *see also Cheairs v. State Dep't. of Transp. and Dev.*, 2003-0680 (La. 12/3/03), 861 So.2d 536.

Prior to the trial of this matter, Appellants filed a motion challenging the expert testimony of Dr. Savant, Dr. Gorman, and Dr. Cummings. Appellants argued that Dr. Savant failed to use accepted methodologies in preparing her life care plans and, thus, should be prevented from offering expert testimony; that Dr. Gorman did not participate substantively in preparing the vocational rehabilitation report Mr. Lavigne sought to introduce at trial; and that Dr. Cummings employed improper methodologies in coming to his expert conclusions about the effect of the accident on Mr. Lavigne's herniated discs.[6]

After the *Daubert* hearings, the trial court found that Mr. Lavigne's proposed experts Dr. Savant, Dr. Gorman, Dr. Cummings, and Dr. Bartholomew met the *Daubert* standard, and ruled their testimony admissible at trial. The record reflects that all of the experts were offered at trial by Mr. Lavigne without

---

[6] Appellants did not challenge Dr. Cummings' qualifications as a biomechanical engineer, only his methodology used in reaching his conclusions.

objection by Appellants.[7] Appellants now re-urge their challenges to the expert testimony of Dr. Savant, Dr. Gorman, and Dr. Cummings.

We review the trial court's rulings on the admission of Mr. Lavigne's experts as interlocutory judgments, which are judgments on preliminary matters in the course of an action and which do not determine the merits of the action. *See* La. C.C.P. art. 1841; *Maqubool v. Sewerage and Water Board of New Orleans*, 2018-0572, p. 3 (La. App. 4 Cir. 11/14/18), 259 So.3d 630, 632. On appeal, "[a]n appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to them, in addition to the review of the final judgment when an unrestricted appeal is taken." *Id.*, 2018-0572, p. 3, 259 So.3d at 632-3 (quoting *Orleans Parish School Board v. Lexington Insurance Company*, 2011-1720, p. 10 (La. App. 4 Cir. 8/22/12), 99 So.3d 723, 729).

We find the assignments of error related to the expert testimony of Dr. Savant, Dr. Gorman, and Dr. Cummings are without merit. The trial court did not abuse its discretion in admitting the testimony.

### Dr. Shelly Savant

Appellants complain that the trial court erred in admitting Dr. Savant's testimony for two reasons. First, Appellants argue, as they did pre-trial, that Dr. Savant should not have been admitted as an expert in life care planning because she utilized only one source—herself—in developing her life care plans for Mr. Lavigne; that she overruled recommendations of other physicians in developing her life care plans; and that she did not limit her life care plans to include only care

---

[7] The record reflects that, on the third day of trial, Appellants objected during a conference with the trial court while the trial was in recess to Dr. Gorman being called as an expert in vocational rehabilitation. When Dr. Gorman was tendered by plaintiffs at trial as an expert in vocational rehabilitation and medical costs, however, there was no objection or questioning by Appellants.

8

that was medically necessary. Appellants assert this did not meet accepted life-care-planning methodologies. Second, Appellants argue that Dr. Savant testified outside the scope of her expertise when she testified about the costs of future medical procedures for Mr. Lavigne and about a previously-undisclosed telephone conversation she had with Dr. Bartholomew, one of Mr. Lavigne's treating physicians, regarding the costs of Mr. Lavigne's future medical procedures. Appellants argue this testimony led to a jury award for future medical expenses that was a "conscience-shocking, punitive verdict that was not reasonably grounded in the evidence." We find these arguments lack merit.

First, we find that the trial court did not abuse its discretion in finding the methodologies used by Dr. Savant met accepted standards in the field of her expertise in life care planning. The record reflects that, both at the *Daubert* hearing, and at trial, Appellants presented the testimony of their own expert in life care planning, Mr. Stanford McNabb. Mr. McNabb testified that it was the recommended—but not the required— standard that life care plan experts consult with other sources, such as treating physicians and other members of a patient's therapeutic team, in developing a life care plan for a patient. Indeed, Mr. McNabb conceded that the life care plan he authored was also based on a single source and involved no consultation with Mr. Lavigne's treating physicians. Further, the record reflects that Dr. Savant, in fact, did consult with Dr. Rand Voorhies, one of Mr. Lavigne's treating physicians and, later, with Dr. Bartholomew. Even if she had not, we do not find that complying with required methodologies but not with recommended methodologies amounts to a finding that Dr. Savant was improperly admitted as an expert life care planner, especially in light of Mr. McNabb's methodology in forming his life care plan.

9

Additionally, although Appellants assert that Dr. Savant overruled the recommendations of Mr. Lavigne's physicians, we do not find that the trial court abused its discretion in finding that her methodology meets *Daubert*. Dr. Savant testified that she overruled recommendations either because, based on expected practices, the recommendation was outdated due to the passage of time or because the recommendation was made by a physician who was acting outside the scope of his practice. Further, Dr. Savant testified at trial that she included in her life care plan only those items which were medically necessary. That Appellants disagree with this assessment does not render her expertise inadmissible under *Daubert*. Therefore, we find that the trial court did not abuse its discretion in admitting Dr. Savant as an expert in life care planning.

Second, we find that the trial court did not abuse its discretion in not limiting Dr. Savant's testimony about the costs of Mr. Lavigne's future medical procedures and about a previously-undisclosed telephone call she had with Dr. Bartholomew regarding same. Appellants failed to object at trial to this questioning, other than raising an objection to hearsay. Therefore, the issue is not preserved for appeal on their argument of lack of disclosure. *Everhardt v. Louisiana Dep't of Transp. & Dev.*, 2007-0981, p. 11, (La. App. 4 Cir. 2/20/08), 978 So.2d 1036, 1046. ("[F]ailing to raise an objection to…testimony at trial, [Appellants] effectively waived any objections [they] might otherwise have had as to…the admissibility of…expert testimony").

Further, Dr. Savant's testimony was elicited after the testimony of Dr. Voorhies, who testified regarding the costs of future medical procedures for Mr. Lavigne. Dr. Savant's testimony was limited to the statement that Dr. Bartholomew, along with Dr. Voorhies, agreed with the costs contained in her life

care plan after both doctors had reviewed it. Finally, Dr. Savant was clear that while her life care plan included costs of future medical care, she did not compile that information—that was Dr. Gorman, who also provided testimony regarding the costs of the medical care needed for Mr. Lavigne. Therefore, even if Dr. Savant's testimony on future medical care costs exceeded her field of expertise, based on the totality of the record before us, we find that that testimony alone was harmless and did not affect the outcome of the case or, as Appellants contend, was the sole cause of the jury's verdict on future medical costs. *See Buckbee v. United Gas Pipe Line Co. Inc.*, 561 So. 2d 76, 85 (La. 1990) ("Error has been defined as harmless when it is 'trivial, formal, merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way affects the final outcome of the case,'" quoting 5 Am.Jur.2d, Appeal and Error § 776 (1962)).

### *Dr. Cornelius Gorman*

Appellants argue that Dr. Gorman's testimony should have been excluded, or at least limited, for several reasons. First, they note that while Dr. Gorman was offered as a vocational rehabilitation expert in trial, he was not originally identified as such by Mr. Lavigne but was instead identified as a "medical cost expert," intended to testify about the prices of medical care contained in the life care plan prepared by Dr. Savant. Instead, according to Appellants, the vocational rehabilitation expert identified by Mr. Lavigne (and who authored the report for Mr. Lavigne) was Ms. Beckwith, Dr. Gorman's colleague, who testified at a pre-trial deposition that Dr. Gorman did not provide any substance for the vocational rehabilitation report. According to Ms. Beckwith, Dr. Gorman merely served as an administrative support supervisor who checked grammar and spelling errors before the report was released. Appellants argue they were "ambushed" by Dr. Gorman's

11

surprise vocational rehabilitation testimony at trial and were deprived of the ability to discover what methodology and facts Dr. Gorman used in forming his opinions. Appellants note that they did not depose Dr. Gorman prior to trial because they relied on Mr. Lavigne's representation that Dr. Gorman was retired and living in Texas.

Second, Appellants argue Dr. Gorman's testimony should have been limited because he was allowed to testify about matters beyond what was contained in Ms. Beckwith's report, including about a phone call he had with Mr. Lavigne—which was not previously disclosed to Appellants—and to the conclusions he reached as a result of that phone call. Third, Appellants argue that Dr. Gorman testified outside the scope of the vocational rehabilitation report when he testified about the plaintiff's ability to perform the duties of the job he held when the accident occurred or the duties of the job he held at the time of trial, opinions which were also not contained in Ms. Beckwith's report.

Appellants' contention that they were surprised by Dr. Gorman's testimony as an expert in vocational rehabilitation and were deprived of the ability to depose him prior to his testifying at trial is not supported by the record. The record reflects that, as early as December 10, 2015—almost two years before trial commenced— Appellants were notified that Mr. Lavigne would call Dr. Gorman as an expert witness in trial because he was so-named—albeit as a medical cost expert—by Mr. Lavigne in his pre-trial witness list. Additionally, the vocational rehabilitation report reflects that Dr. Gorman signed the report in addition to Ms. Beckwith, giving Appellants notice that he participated in some way in authoring it and indicating that he may be called as an expert in vocational rehabilitation, as well. Appellants were also notified that Dr. Gorman would be called as an expert in

vocational rehabilitation in addition to being called as an expert in medical costs on August 31, 2017, at the *Daubert* hearing for Dr. Gorman. Any doubt Appellants may have had about whether Dr. Gorman would be called as an expert in vocational rehabilitation was resolved by the Joint Pre-Trial Memorandum filed on September 15, 2017, ten days prior to the commencement of trial. The Memorandum was authored and signed by both Appellants and counsel for Mr. Lavigne, and it unequivocally names Dr. Gorman as an expert to be called by Mr. Lavigne in the field of vocational rehabilitation. Therefore, we do not find the trial court abused its discretion in not finding Dr. Gorman's testimony in vocational rehabilitation was a surprise to Appellants.

Neither do we find that the trial court abused its discretion in finding Appellants had the ability to conduct discovery on Dr. Gorman's methodologies and expert conclusions. The record reflects that Appellants were aware, at a minimum, close to two years prior to trial that Dr. Gorman would testify as an expert in the trial of this matter. That he was listed as an expert in a different field than that which he ultimately testified in is of no moment to whether Appellants had the opportunity to depose Dr. Gorman. In addition to having notice of Dr. Gorman's proposed expert testimony for two years prior to trial, the record reflects that Appellants were also given the opportunity to depose Dr. Gorman at the August 31, 2017 hearing and expressly waived that opportunity.

Finally, we find that, based on the foregoing and an evaluation of the record on Dr. Gorman's expertise and testimony, it was not an abuse of the trial court's discretion in allowing Dr. Gorman's testimony. Prior to trial, Appellants did not challenge Dr. Gorman's credentials or state specific grounds for challenging his methodologies and conclusions in the vocational rehabilitation report such that his

expert testimony would not be admissible under *Daubert*. They likewise do not raise any specific grounds on appeal that Dr. Gorman's testimony is inadmissible under *Daubert*. At trial, Dr. Gorman testified to his extensive educational and experiential background in the area of vocational rehabilitation, including that he had been working and qualified to give expert testimony in court in that field since 1974. We thus find that the trial court's admission of his testimony to be compatible the requirements of *Daubert* and not an abuse of discretion.

Likewise, the trial court did not abuse its discretion in not limiting Dr. Gorman's testimony, including not limiting testimony about a previously-undisclosed phone call Dr. Gorman had with Mr. Lavigne, the conclusions he formed therefrom, and other testimony about Mr. Lavigne's ability to perform his job duties. The complained-of phone call to Mr. Lavigne was one that Dr. Gorman characterized as a confirmation of the statements Mr. Lavigne made to Ms. Beckwith, in preparation of the vocational rehabilitation report. Although Appellants assert that this phone call was previously undisclosed, had Appellants deposed Dr. Gorman when they were given the opportunity, this phone call likely would have been disclosed then. Additionally, because the record reflects that Dr. Gorman's role in preparing the vocational rehabilitation report was largely supervisory, a fact of which Appellants were aware, it is within the scope of expectation that Dr. Gorman would follow up with Mr. Lavigne to confirm Ms. Beckwith's statements in the report before signing off on it.

We do not find that Dr. Gorman testified outside of his area of expertise or outside of the information contained in the vocational rehabilitation report. Dr. Gorman testified that, as a vocational rehabilitation expert, he was called upon to consult with Mr. Lavigne about the employment he held at the time of the accident,

the employment he currently holds, and what future job prospects he may have, should he leave that employment, which Dr. Gorman named Mr. Lavigne's "before-" and "after-injury profiles." Dr. Gorman expressly testified these profiles were contained in the report. We therefore find that Dr. Gorman's testimony, based on his consultation with Mr. Lavigne, about his abilities in his past and current jobs were within Dr. Gorman's field of vocational rehabilitation and were contained in the profiles contained in his report. We therefore find that the trial court did not abuse its discretion in admitting and not limiting Dr. Gorman's expert testimony.

### Dr. Jeremy Cummings

Appellants argue Dr. Cummings' testimony should have been limited and he should not have been allowed to testify regarding biochemical engineering due to what was, according to Appellants, the trial court's ruling on this issue. Appellants argue this ruling was abruptly changed after Mr. Lavigne was allowed to untimely submit additional information on Dr. Cummings' methodology after the commencement of trial after Mr. Lavigne's counsel had an improper *ex parte* communication with the trial court's law clerk about the case.

Appellants' contention that the trial court ruled Dr. Cummings was unable to testify as an expert in biochemical engineering is not supported by the record. Indeed, Appellants, in their pretrial motion challenging the admissibility of Dr. Cummings' expert testimony, stated they were not challenging Dr. Cummings as an expert in biomechanical engineering but were merely challenging his methodologies. Nevertheless, the record reflects that at no point did the trial court rule Dr. Cummings could not testify as an expert in biomechanical engineering.

We find that the trial court did not abuse its discretion in admitting Dr. Cummings' testimony as an expert in biomechanical engineering generally, and

specifically, on the use of the MADYMO model[8] to determine the effects of the forces of the accident in causing Mr. Lavigne's herniated discs. The only challenge to Dr. Cummings' testimony Appellants asserted pre-trial and on appeal is whether Dr. Cummings' use of the MADYMO model to determine the effect of the accident on Mr. Lavigne's back and neck was proper. Appellants asserted that, per accepted methodologies, the MADYMO could not be used in the way Dr. Cummings used it. The record reflects that Dr. Cummings provided sources which supported his use of MADYMO in the way in which he used it, which the trial court found credible, and which resolved the trial court's doubts about Dr. Cummings' testimony. Aside from arguing that the sources were produced late—albeit at the trial court's request—Appellants make no showing that the sources are unreliable or incorrect. Having already found that Appellants waived their right to object to the timeliness of the conclusion of the hearing for Dr. Cummings or his production of additional sources for his methodologies, we find that the trial court did not abuse its discretion in allowing Dr. Cummings' testimony or the additional sources that supported Dr. Cummings' methodology.

## II. Admission of Dr. Bradley Bartholomew's Testimony

Appellants assert that the trial court should not have allowed Dr. Bartholomew to testify as to an examination he performed on Mr. Lavigne on the second day of trial that had not been previously disclosed to Appellants. Appellants further argue that the trial court erred in allowing Dr. Bartholomew to testify and opine, not as a treating physician, but as an expert, regarding Mr. Lavigne's current

---

[8] The MADYMO model is biomechanical engineering model of the human body, developed by the United States Air Force, which Dr. Cummings opined could be used to measure the effect of forces on discs in the human body.

physical condition, what future medical care he may need, and the cost of that future medical care. We find both of these arguments to be without merit, and that the trial court did not abuse its discretion in allowing Dr. Bartholomew's testimony.

The record reflects that, contrary to Appellants' contention, Dr. Bartholomew was offered and accepted—without questioning or objection by Appellants—as both an expert in neurosurgery and as Mr. Lavigne's treating physician. To the extent that Appellants failed to timely raise an objection to Dr. Bartholomew's expertise at trial, they have waived their ability to assign as error any testimony he gave as an expert at trial. *Everhardt*, 2007-0981, p. 11, (La. App. 4 Cir. 2/20/08), 978 So.2d 1036, 1046. Nevertheless, this Court finds that Dr. Bartholomew's testimony about Mr. Lavigne's need for neck surgery to correct his physical condition—which Dr. Bartholomew opined was caused by the accident— to be within Dr. Bartholomew's field of expertise in neurosurgery. This Court also finds, based on the fact that Dr. Bartholomew testified about his extensive experience as a neurosurgeon, which would necessarily include knowledge of the cost of those surgeries, that his testimony on the expected cost of Mr. Lavigne's surgery was also within Dr. Bartholomew's field of expertise. Dr. Bartholomew's testimony as a treating physician was also properly admitted because he testified that he was not only retained for purposes of litigation as an expert, but to examine Mr. Lavigne, review his symptoms and medical history, make diagnoses, and offer medical advice based on those diagnoses on the treatment of Mr. Lavigne's medical condition.

A review of the record shows that Appellants' complaint that Dr. Bartholomew should not have been permitted to testify about his examination of

Mr. Lavigne on the second day of trial was also waived by Appellants' failure to object to this testimony at trial. Indeed, the record reflects that, during a recess of the trial, Appellants conceded that Dr. Bartholomew could testify as to all examinations Dr. Bartholomew performed on Mr. Lavigne, including the one that occurred after the beginning of trial, if the most recent examination did not change Dr. Bartholomew's medical opinions. Dr. Bartholomew went on to testify—without objection by Appellants—that he examined Mr. Lavigne after the commencement of trial and that his medical opinions on Mr. Lavigne's treatment remained the same. Based on this recent examination of Mr. Lavigne, it was not an abuse of discretion for the trial court to allow testimony regarding Mr. Lavigne's current physical condition.

## III. Jury Instructions

Appellants also assert that the trial court erred in instructing the jury on comparative fault, future medical expenses, and past and future lost wages, and that the erroneous instructions lead to a "conscience-shocking" jury award in favor of Mr. Lavigne. Appellants assert that, as a result, the judgment should be reviewed *de novo* because the judgment rendered by the jury was not grounded in law or facts. We find these assignments of error lack merit.

"A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection." La. C.C.P. art. 1793(C); *See also Yokum v. Funky 544 Rhythm & Blues Cafe*, 2016-1142, p. 5 (La. App. 4 Cir. 5/23/18), 248 So.3d 723, 731; *Johnson v. Terrebonne Parish Sheriff's Office*, 1995-1180 (La. App. 1 Cir. 2/23/96), 669 So.2d 577. "A party's failure to timely object,

18

for the record, with specificity, constitutes a waiver of the objection." *Berrera v. Hyundai Motor Am. Corp.,* 620 So.2d 890, 893 (La. App. 4 Cir. 1993). This rule is meant to prevent counsel from "permit[ing] or acquiesc[ing] in an easily corrected procedural error and then, after an adverse verdict, urge such error for the first time as a ground for setting aside the jury verdict reached by the expensive and cumbersome method of a jury trial." *Renz v. Texas & Pacific Railway Co.*, 138 So.2d 114 (La. App. 3 Cir. 1962).

We find that Appellants waived appellate review of this issue because the record reflects that Appellants failed to object to the jury instructions, either before the jury retired to deliberate or after. Instead, review of the record shows that, Appellants made some arguments as to additions or deletions from the jury instructions in the jury charge conference held on the penultimate day of trial and before the jury entered the courtroom to hear closing arguments. They did not, however, make any objection to the specific jury instructions once the trial court read them. During the conferences with the Court on the jury instructions, Defendants noted they disagreed with counsel for Mr. Lavigne's appreciation of the law on comparative fault and past and future lost wages. Before the charges were read, however, the record shows that the parties and the trial court had reached an agreement on the charges to be given to the jury. Therefore, this issue has not been preserved for appeal.

"Nevertheless, if jury instructions or interrogatories contain a 'plain and fundamental' error, the contemporaneous objection requirement is relaxed and appellate review is permitted." *Chicago Prop. Interests, L.L.C. v. Broussard*, 2015-0299, p. 4 (La. App. 4 Cir. 10/21/15), 177 So.3d 1074, 1078 (citing *Berg v. Zummo*, 2000-1699, p. 13, n. 5 (La. 4/25/01), 786 So.2d 708, 716). Appellate

courts should exercise restraint before reversing a jury verdict because of erroneous jury instructions, and the trial court judgment will not be reversed so long as the charges accurately reflect the substance of the law. *Nicholas v. Allstate Ins. Co.*, 99-2522, p. 8 (La. 8/31/00), 765 So.2d 1017, 1023. "In order to determine whether an erroneous jury instruction was given, reviewing courts must assess the targeted portion of the instruction in the context of the entire jury charge 'to determine if the charges adequately provide the correct principles of law as applied to the issues framed in the pleadings and the evidence and whether the charges adequately guided the jury in its determination.'" *Wooley v. Lucksinger*, 2009-0571, p. 82 (La. 4/1/11), 61 So.3d 507, 574 (quoting *Adams v. Rhodia, Inc.*, 2007-2110 pp. 5-6 (La. 5/21/08), 983 So.2d 798, 804). The court must consider on appeal whether the jury instructions misled the jury to such an extent that justice could not be dispensed. *Adams*, 2007-2110, p. 7, 983 So.2d at 804; *Nicholas*, 1999-2522, p.8, 765 So.2d at 1023. "In making charges to a jury, a trial judge is not required to give the precise instructions submitted by either party, but must give instructions which properly reflect the applicable law in light of the facts of the particular case." *Taylor v. Tulane Med. Ctr.*, 98-1967, p. 7 (La. App. 4 Cir. 11/24/99), 751 So.2d 949, 955 (quoting *Goodman v. Allstate Ins. Co.*, 98-732, p. 3 (La. App. 5 Cir. 5/19/99), 736 So.2d 310).

Based on a review of the record, we find that there was no plain and fundamental error contained in the jury instructions. The trial court gave jury instructions that properly reflected the applicable law in light of the facts and evidence presented in this case. We thus decline to reverse the trial court's judgment.

## IV. Prejudicial Remarks by Mr. Lavigne's Counsel During Trial

We next address Appellants' assignment of error regarding remarks made by counsel for Mr. Lavigne during trial, which Appellants argue were inflammatory, prejudicial, and contributed to the conscience-shocking jury award in favor of Mr. Lavigne. Specifically, Appellants assert that counsel for Mr. Lavigne stated in his opening statement that Gray Insurance, to whom Appellants complain Mr. Lavigne's counsel referred as "the insurance company," was "going out of [its] way" to prevent Mr. Lavigne from being "ma[de] whole." Appellants objected at the close of opening statements to these remarks. Appellants contend that this statement was part of a systemic attack on Gray Insurance, which led to a punitive jury award that was not grounded in law or facts entered into evidence at trial and that a new trial should be ordered. Appellants point to a ruling by the trial court on a pre-trial motion *in limine* wherein Mr. Lavigne's counsel was ordered not to make inflammatory remarks about Gray Insurance at trial. Other than the one remark made in opening statements, however, Appellants point to no other inflammatory and improperly prejudicial remarks by Mr. Lavigne's counsel.

Mr. Lavigne counters that Mr. Lavigne was never ordered to refrain from referring to Gray Insurance as "the insurance company" and that Appellants' complained-of remarks were both taken out of context and not so prejudicial as to warrant a new trial. We agree.

Whether statements by counsel in argument in a civil jury trial are proper must be determined by the facts, conduct, and atmosphere of that particular trial and the arguments of opposing counsel. *Luquette v. Bouillion*, 184 So.2d 766 (La. App. 3rd Cir. 1966); *see also Temple v. Liberty Mut. Ins. Co.*, 316 So.2d 783, 793 (La. App. 1st Cir. 1975). While trial counsel has great latitude in arguing before a

21

civil jury, the latitude is controlled by the trial court, who has a duty to confine statements. *Karagiannopoulos v. State Farm Fire & Casualty Co.*, 94-1048 (La. App. 5 Cir. 11/10/99); 752 So.2d 202, 209. The ruling of the trial court on possible prejudicial remarks of counsel before a civil jury is accorded great weight and will not be reversed absent an abuse of discretion. Temple, 316 So.2d at 894; *Henderson v. Louisiana Downs, Inc.*, 566 So.2d 1059, 1063 (La. App. 2nd Cir.1990).

In *Carter v. Baham*, 95-2126 (La. App. 4 Cir. 10/09/96), 683 So.2d 299, 303, this Court held that, "[c]ounsel has wide latitude to fully discuss the evidence that was presented in the case, which includes any inferences, deductions, or analogies that may be reasonably drawn from the evidence." Despite this wide latitude, however, this Court has held that "statements not based on evidence or which encourage the jury to resolve issues by passion or prejudice are improper during summation." *Id*. This Court also acknowledged, however, that "[c]ounsel may properly argue and comment on matters of general knowledge and folklore outside the record… [and] may use illustrations based on personal experience." *Id*. at 304.

Mr. Lavigne's counsel stated the following in his opening statement: "For the insurance company in this case you will hear evidence that they've gone out of their way, out of their way, to try not to make… Mr. Lavigne whole." Mr. Lavigne's counsel went on to state that Appellants—and specifically Gray Insurance—would try to claim the accident which caused Mr. Lavigne's injuries was, in whole or in part, due to the fault of Ms. Lowenburg. Indeed, in Appellants' own opening statement, Ms. Lowenburg's fault was asserted. Appellants stated: "[Keep] in mind that it was Ms. Lowenburg's vehicle that did hit Mr. Lavigne's

vehicle. It was a three-car crash; she's the one in the middle. But it's not that defendants made that up."

Additionally, not only did Appellants in fact argue Ms. Lowenburg's fault in opening statements as Mr. Lavigne's counsel's opening statement said they would—presumably in order to avoid liability as Mr. Callais' insurer—but Appellants presented evidence at trial of Ms. Lowenburg's fault and have asserted her fault on appeal, as well. Therefore, statements that Appellants would use Ms. Lowenburg's fault as a means to avoid liability and lessen Mr. Lavigne's recovery were not prejudicial, but factual. Further, because Gray Insurance is named as a defendant in the caption of the case as "Gray Insurance Company," and was a party in the case in their capacity as Mr. Callais' motor vehicle insurance company, calling Gray Insurance "the insurance company" was also factual, not prejudicial. Even if the remarks were prejudicial, we find that the trial court cured this by giving the following instruction immediately prior to opening arguments:

> The arguments that the lawyers will make to you in opening and closing statements are not evidence. Your decision on the facts must be based on the testimony and the evidence that you hear and see, what comes from this chair, this is where your evidence comes from.

Given the facts presented in the case and the remarks made by all counsel in opening statements, the remarks made by counsel for Mr. Lavigne in his opening statement do not amount to a systemic inflammatory attack on Appellants that was so prejudicial as to warrant a new trial. Aside from the opening statement, Appellants cite no other instance of prejudicial remarks by counsel, and our review of the record does not reveal any such statements might warrant a new trial.

As discussed above, notwithstanding any prejudicial remarks by Mr. Lavigne's counsel, a review of the record, including the evidence presented on Mr.

Callais' duty as a motorist turning from an inferior street to a superior street, and the costs of Mr. Lavigne's past and future medical expenses, as well as his lost wages and diminished earning capacity, supports the jury's verdict and award of damages. We therefore find that this assignment of error lacks merit.

## V. Disqualification of Mr. Lavigne's Counsel

Last, we address Appellants' assignment of error regarding the trial court's denial of Gray Insurance's motion to disqualify counsel for Mr. Lavigne. Appellants argue that Mr. Lavigne's counsel is burdened by a conflict of interest under the Louisiana Rules of Professional Conduct due to the fact that counsel's law partner, Mr. Taylor, represented Gray Insurance in another personal injury matter prior to and during counsel's representation of Mr. Lavigne at trial and that this conflict was not waived in writing by Gray Insurance. Gray Insurance asks this Court to disqualify Mr. Lavigne's counsel and assess all costs Gray Insurance incurred in defending itself in the instant matter against Mr. Lavigne's counsel and his law firm. Mr. Lavigne counters that Mr. Taylor received an oral waiver of the conflict from Gray Insurance and that, because this matter has already been tried before a jury who rendered a verdict, disqualifying Mr. Lavigne's counsel at this juncture would serve no purpose other than to unfairly prejudice Mr. Lavigne. We agree.

> Rule 1.9(a) of the Louisiana Rules of Professional Conduct states:
>
> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Appellants and counsel for Mr. Lavigne disagree over whether Gray Insurance gave consent to waive the conflict of interest in any form. The record is

24

clear, however, that, even if consent was given, it was not given in writing, as required by Rule 1.9. Nevertheless, Mr. Taylor, an attorney and law partner of Mr. Lavigne's counsel, submitted an affidavit attesting to the fact that he obtained Gray Insurance's oral consent to waive the conflict of interest and both he and counsel for Mr. Lavigne proceeded in their representation of Gray Insurance and Mr. Lavigne based on that belief. It was not until Gray Insurance filed its motion to disqualify Mr. Lavigne's counsel that there was any indication the conflict had not been waived. Nothing has been submitted that shows that this affidavit is incorrect. Based on a review of the record, this Court does not believe that Mr. Taylor—or Mr. Williams—would flagrantly disregard the Rules of Professional Conduct or submit a false affidavit regarding whether consent to waive the conflict of interest was received. Because the matter has already proceeded to trial and verdict has been rendered, disqualifying Mr. Lavigne's counsel at this point would serve no other purpose than to punish Mr. Lavigne. Therefore, we affirm the trial court's ruling.

**DECREE**

Based on the foregoing, we affirm the jury's verdict and award of damages. We also affirm the trial court's denial of the motion to disqualify Mr. Lavigne's counsel.

**AFFIRMED**