ROLAND L. BELSOME, Judge.
| ,Dr. Susan Hooper is appealing the trial court’s dismissal of her claims pursuant to the granting of summary judgment in favor of Robert and Leah Payne and Traveler’s Casualty Insurance (collectively referred to as “defendants”). Dr. Hooper is also appealing the trial court’s ruling to exclude the expert testimony of Dr. Patricia Salvato.
On April 19, 2000, Dr. Hooper leased commercial office space from Robert and Leah Payne. The office was located at 8584 A Belle Chasse Highway, Belle Chasse, Louisiana. Dr. Hooper operated her chiropractic clinic at that location until November of 2003.
During the time she was operating her clinic at the leased property, Dr. Hooper began to experience adverse health effects.[1] In May of 2003, she was informed that the office was contaminated with toxic mold. A certified mold remediator inspected the property and test results revealed that high quantities of *1204 |2Stachybotrys mold were present in the gypsum board lining the of the treatment room and also in the return air duct.
Subsequently, Dr. Hooper notified the Paynes that there was mold in the building and that she was experiencing health problems. Sometime in September of 2003, the Paynes began making repairs during which time Dr. Hooper claims her symptoms increased. She vacated the premises on November 1, 2003. Dr. Hooper then filed a Petition for Damages alleging economic losses and physical injury due to the defective condition of the property.
Prior to trial, the defendants filed a motion to exclude the expert testimony of Dr. Patricia Salvato. Dr. Salvato is an internal medicine specialist and Dr. Hooper’s treating physician. Dr. Salvato has diagnosed Dr. Hooper with chronic fatigue syndrome. She relates Dr. Hooper’s condition to mold exposure. The defendant’s challenged her methodology in developing that opinion under the Daubert standard. The trial court accepted briefing and oral argument on the motion to exclude and found that Dr. Salvato was not qualified to give her expert opinion as to the causation of Dr. Hooper’s health problems.
The defendants then filed a motion for summary judgment claiming that without expert testimony Dr. Hooper could not meet her burden of proof regarding the causation of her alleged injuries. Dr. Hooper motioned the court for a continuance to obtain a report from another expert. That motion was denied and the trial court granted summary judgment dismissing all of Dr. Hooper’s claims against the defendants. This appeal followed.
|sOn appeal, Dr. Hooper contends that the trial court erred by: 1) excluding the expert testimony of Dr. Patricia Salvato; 2) not granting the requested continuance in order to obtain the affidavit of the new treating physician and expert, Dr. Michael Gray; 3) granting summary judgment dismissing the case with prejudice because there are genuine issues of material fact; 4) finding that there was no evidence of significant levels of mold, despite contrary evidence, thus improperly making a factual determination; 5) finding that the plaintiff cannot prove causation for any level of mold exposure or damage, even acute damage; and 6) dismissing all claims of plaintiff, when the only claims of plaintiff that were asked to be dismissed in the motion were the chronic medical conditions, and there was no discussion of the acute mold-exposure symptoms or of the plaintiffs claims for breach of the warranty against vices in leased property and constructive eviction.

Exclusion of Dr. Salvato’s Testimony

The defendants challenged Dr. Salvato’s expert testimony under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Daubert standard requires that scientific expert testimony not only be relevant but also reliable. Id. at 590-593, 597, 113 S.Ct. 2786. The Supreme Court in Daubert required a “preliminary assessment [by the trial court] of whether the reasoning or methodology underlying the [expert’s] testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue.” Id. at 593, 113 S.Ct. 2786. That “gatekeeping” function was further expanded by the |4United States Supreme Court’s opinion in Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137, 152, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999), to apply to all expert testimony, including opinion evidence based solely on special training or experience.
Daubert set forth some non-exclusive factors for courts to consider in making a determination as to whether an expert’s testimony was relevant and reliable. *1205 Those factors include but are not limited to: (1) the testability of the technique or scientific theory; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the technique had gained “general acceptance.” Daubert at 593-594, 113 S.Ct. 2786.
In this case, Dr. Salvato was being offered as an expert to establish causation between Dr. Hooper’s exposure to toxic mold and her health problems. As this Court discussed in Watters v. Department of Social Services, 08-977 (La.App. 4 Cir. 6/17/09), 15 So.3d 1128, causation in a toxic mold case must be proven on five levels: “(i) the presence of mold, (ii) the cause of the mold and the relationship of that cause to a specific defendant, (iii) actual exposure to the mold, (iv) the exposure was a dose sufficient to cause health effects (general causation), and (v) a sufficient causative link between the alleged health problems and the specific type of mold found (specific causation).” Id. at 1143.
Dr. Salvato is board certified in internal medicine and has written numerous articles on the topic of chronic fatigue syndrome. During the course of her | ¿treatment with Dr. Salvato, Dr. Hooper was diagnosed with chronic fatigue syndrome. When Dr. Salvato was deposed, she testified that it was her opinion that Dr. Hooper’s current health condition was related to her exposure to toxic mold. It was also her testimony that she had no knowledge of what type of mold Dr. Hooper had been exposed to or at what levels. Further, Dr. Salvato admitted that she was unaware of any medical literature relating chronic fatigue syndrome to mold exposure. And although she had written peer review articles on chronic fatigue syndrome, she had not written any peer review articles or research publications on toxic mold. Nor had she attended any seminars on toxic mold.
At the time that Dr. Hooper began seeing Dr. Salvato, she had been removed from the premises for approximately four years. Dr. Salvato relied on Dr. Hooper’s account of her health history and exposure to mold at the premises to develop a temporal proximity theory. Again, that opinion was formed without any knowledge of the types of mold that had been discovered or the level of exposure. When she was asked: “[w]hat methodology did you use, if any, to arrive at the conclusion that her exposure to mold was the factor that caused her chronic fatigue syndrome?” Dr. Salvato replied: “[t]he fact that she said before that she was fine.”
The trial court determined that Dr. Sal-vato’s testimony did not meet the requirements of Daubert, stating that:
The court finds that the doctor’s sole reliance on the temporal relationship is insufficient to satisfy the Daubert requirement; and ... I[sic], therefore, scientifically invalid.
The court does recognize — and this is a bench trial — that a neurotoxicologist is going to be retained by the plaintiff ...
| ^Appellate Court’s review of a trial court’s decision to allow or exclude expert testimony is conducted under an abuse of discretion standard. Cheairs v. State Dep’t. of Transp. and Dev., 2003-0680 (La.12/3/03), 861 So.2d 536. Given Dr. Sal-vato’s deposition testimony that she formed a temporal proximity theory without having specific information regarding the exposure, we cannot find that the trial court abused its discretion in excluding her as an expert on the issue of causation under Daubert and Watters.
Once Dr. Hooper’s expert’s testimony on causation was excluded, the defendants filed a motion for summary judgment as *1206 serting that Dr. Hooper was unable to establish a critical element of her claim.
Defendants’ motion for summary judgment was filed and set for August 5, 2010. From that setting, Dr. Hooper requested a continuance because her counsel had a week-long trial in federal court. The trial court granted that unopposed request and rescheduled the motion for summary judgment for August 30, 2010. Just prior to that hearing date, Dr. Hooper motioned for a second continuance. The reasons provided to the court for the second continuance was that she needed additional time to obtain a medical report and records from her then treating physician, Dr. Michael Gray. Dr. Gray’s office is located in Phoenix, Arizona.
Based on documents in the record, Dr. Gray possesses expertise in the field of clinical, occupational, and environmental medicine and toxicology. Dr. Hooper began treating with Dr. Gray in March 2010. Dr. Hooper’s counsel was relying on Dr. Gray to submit an affidavit prior to the summary judgment hearing. Just |7prior to that hearing, Dr. Gray presented Dr. Hooper’s counsel with a consulting contract that requires a substantial retainer. Dr. Gray would not provide the affidavit necessary for the hearing until the consulting agreement was executed and the retainer was paid.
La. C.C.P. art. 1602 provides that “[a] continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case.... ” Dr. Gray’s opinion on causation was needed to oppose the motion for summary judgment filed by the defendants. The defendants presented the trial court with an expert opinion stating, among other things, that the levels and types of mold that existed in the premises could not have caused Dr. Hooper’s health problems. Without countervailing evidence on the issue of causation Dr. Hooper’s case was dismissed in its entirety. Therefore, the evidence was absolutely material to the case. We must then consider whether due diligence was exercised in attempting to secure the evidence in a timely manner.
The hearing date for the defendants’ motion for summary judgment was approximately six months from the date that the trial court excluded Dr. Salvato’s testimony on causation. In that time frame, Dr. Hooper located Dr. Gray, an out-of-state physician that specializes in toxic mold related illnesses. She anticipated that once he rendered an opinion as to the cause of her health issues, Dr. Gray would provide an affidavit or report outlining his opinion. Based on the representations by Dr. Hooper’s counsel, he and his client were somewhat 18surprised by the necessity of executing the consulting agreement and submitting a retainer prior to Dr. Gray publishing his opinion. Again, as represented by counsel, at the time that he learned of these demands by Dr. Gray, he was participating in another trial that was being conducted out of town. Counsel for Dr. Hooper asserts that the efforts put forth by him and his client evidence due diligence in obtaining the material evidence.
According to Black’s Law Dictionary, due diligence is the “diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or discharge an obligation.” Black’s Law Dictionary 523 (9th ed.2009). It is evident from the record that actions were taken within the six month period after the exclusion of Dr. Salva-to’s testimony. Although the defendants characterize six months as a monumental interval, we do not find that time frame unreasonable in this context. In the *1207 past, courts have found that “when an applicant’s diligence cannot be positively determined, the court should rather grant the continuance. Its allowance produces delay, but its denial may cause irreparable injury.” Matte v. Louisiana Farm Bureau Casualty Insurance Co., 95-1308, p. 6 (La.App. 3 Cir. 6/12/96), 676 So.2d 713, 715 (quoting Brunet v. Wyble, 502 So.2d 241, 243 (La.App. 3 Cir.1987)).
Given the subjective nature of a due diligence standard, and counsel’s representations to the trial court that he fully intended to retain Dr. Gray and produce the evidence required to move this case forward, we find that the trial court abused its discretion in granting the motion for summary judgment and | dismissing Dr. Hooper’s claims. Under these circumstances, the trial court should have allowed counsel additional time to obtain the evidence that could prove critical to his client’s case. Accordingly, we reverse the trial court’s denial of the motion to continue and the granting of summary judgment.
Even though we are reversing the trial court’s granting of the summary judgment, we are not rendering any opinion on the merits of the motion for summary judgment or the weight of any forthcoming evidence. We are simply allowing Dr. Hooper an additional amount of time, to be determined by the trial court, to present evidence in support of her opposition to the motion for summary judgment.
After the trial court granted summary judgment and while this appeal was pending, Travelers and the Paynes filed a motion to tax costs. The motion sought a total award of $10,435.22. Following a hearing, the court awarded the sum of $6,035.22 as stipulated by Dr. Hooper, $900.00 as an expert witness fee to Barbra Lee, and $1,100.00 as an expert witness fee to Dr. Lopez. The court denied an expert witness fee for Dr. Salvato.
Dr. Hooper filed a motion for devolutive appeal; this Court has consolidated that appeal (2011-CA-0220) with the first filed appeal (2010-CA-1685). Given this Court’s determination regarding the dismissal of Dr. Hooper’s claims, we find the trial court’s award of costs to be moot. Thus, that judgment is vacated.
For the reasons discussed, we affirm the trial court’s exclusion of Dr. Patricia Salva-to’s testimony, we reverse the denial of the motion to continue summary judgment hearing, and thus reverse the granting of the motion for | insummary judgment. The judgment taxing costs is vacated and the case is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART; AND REMANDED
JONES, J., concurs in part and dissents in part for the reasons assigned by Judge LOVE.
LOVE, J., concurs in part and dissents in part.

. Symptoms experienced by Dr. Hooper included joint pain, headaches, chest pain, itchy eyes, upper respiratory and sinus infections, fatigue, and mental cloudiness.