SHAQUANA HARVEY, INDIVIDUALLY AND IN HER CAPACITY AS THE NATURAL TUTRIX OF JADEN HARVEY

VERSUS

ERIC WAYNE HAMBY, PLAQUEMINES PARISH SHERIFF'S OFFICE, THROUGH GERALD A. TURLICH, JR., SHERIFF, AND AMERICAN ALTERNATIVE INSURANCE CORPORATION

\* NO. 2023-CA-0084

\*

\* COURT OF APPEAL

\*

\* FOURTH CIRCUIT

\*

\* STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 64-194, DIVISION "A"
Honorable Kevin D. Conner, Judge
\* \* \* \* \* \*
**Judge Nakisha Ervin-Knott**
\* \* \* \* \* \*

(Court composed of Judge Rosemary Ledet, Judge Dale N. Atkins, Judge Nakisha Ervin-Knott)

Brett J. Prendergast
ATTORNEY AT LAW
4603 South Carrollton Avenue
New Orleans, LA 70119

    COUNSEL FOR PLAINTIFF/APPELLEE

Daniel R. Martiny
Jeffrey D. Martiny
James B. Mullaly
MARTINY & ASSOCIATES, LLC
131 Airline Drive
Suite 201
Metairie, LA 70001

    COUNSEL FOR DEFENDANTS/APPELLANTS

**AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH
INSTRUCTIONS
October 4, 2023**

NEK
RML
DNA

Eric Wayne Hamby (hereinafter "Mr. Hamby"), the Plaquemines Parish Sheriff's Office through Gerard A. Turlich, Jr., Sheriff of Plaquemines Parish, and American Alternative Insurance Corporation (hereinafter collectively "Defendants") seek review of the trial court's October 24, 2022 bench trial judgment that awarded damages to Shaquana Harvey (hereinafter "Ms. Harvey"), individually and in her Capacity as the natural tutrix of Jaden Harvey (hereinafter "Jaden"). After considering the record before this Court, we reverse the trial court's allocation of fault and remand for further proceedings consistent with this opinion; reverse the trial court's award of La. C.C. art. 2315.6 damages to Ms. Harvey; and in all other respects, affirm the trial court's October 24, 2022 judgment.

## RELEVANT FACTS AND PROCEDURAL HISTORY

On January 13, 2017, Mr. Hamby was traveling on the Pointe a la Hache Ferry Access Road in a fully marked Plaquemines Parish Sheriff's Office vehicle. As he approached the levee, but before reaching the top of the levee, Mr. Hamby collided with Jaden, who was operating his dirt bike on the levee and crossing the Pointe a la Hache Ferry Access Road. At the time of the collision, Jaden was eight years old. Jaden was taken by ambulance to the hospital and sustained injuries of a fractured

left femur, splenic hematoma, and forehead laceration, which required him to undergo a variety of surgical procedures.

Ms. Harvey, individually and as natural tutrix of her minor son, Jaden, filed a petition for damages on January 4, 2018. Defendants filed an answer to the petition for damages on March 28, 2018, and specifically pled comparative fault as to Jaden, but not as to Ms. Harvey, neither individually nor as natural tutrix of Jaden. This matter proceeded as a bench trial on September 14, 2022, during which four witnesses testified: Mr. Hamby, Jaden, Ms. Harvey, and Wayne Winkler (hereinafter "Mr. Winkler"), Ms. Harvey's expert accident reconstructionist. The deposition of Ms. Harvey's expert in orthopedic surgery, Dr. Robert Douglas Bostick, III (hereinafter "Dr. Bostick") was also introduced into evidence at trial.

### Mr. Hamby's Testimony

Mr. Hamby testified that he worked for Plaquemines Parish Sheriff's Office from 1995 to 2002 as a patrol deputy and from 2014 to 2019 in the IT Department maintaining and administering the network at Plaquemines Parish Detention Facility. In his personal experience as a patrol deputy on the Eastbank and Westbank of Plaquemines Parish, Mr. Hamby testified that he never wrote a ticket to anyone for riding a motor vehicle on the river levee. Also, he never saw any citations written by a deputy for a violation of Parish Ordinance 15-12(b).

On the day of the collision, Mr. Hamby explained that he completed his shift at the Detention Facility and was heading to the Pointe a la Hache Ferry in order to go to his home in Belle Chase. He was traveling down Highway 15 towards the ferry landing, and before reaching the top of the levee on the ferry ramp access road, Mr. Hamby made impact with Jaden on his dirt bike. On cross-examination, Mr. Hamby explained that he did not see Jaden until he was in front of the vehicle and by that

2

time, it was too late to apply brakes. Yet, on direct examination, Mr. Hamby clarified that once he saw Jaden, he immediately applied brakes and impact occurred shortly thereafter. Mr. Hamby further testified that Jaden had almost crossed the entirety of the ferry landing by the time the collision occurred. Additionally, Mr. Hamby noted that there are no signs on the levee stating motor vehicle usage on the levee is prohibited.

### Jaden's Testimony

Jaden testified that he was riding his dirt bike on the levee the day of the collision. He stated that he was returning to his home on Highway 15 traveling from playing basketball with his friends on Caledonia Lane. Jaden further testified that he rode his dirt bike on the levee a number of times, and that no one told him he should not ride his dirt bike on the levee nor did he know that it was illegal for him to ride his dirt bike on the levee.

Jaden explained that as he was riding on the levee, he did not observe any signs regarding the speed limit for motorized vehicles. Although his dirt bike did not have a speedometer, Jaden estimated that he was traveling at twenty miles per hour based on the wind. Jaden further testified that right before the collision, he looked to his right and saw Mr. Hamby's vehicle, but it was too late for him to stop his dirt bike. Jaden explained that he was almost to the other side of the ferry landing when he collided with Mr. Hamby's vehicle and noticed Mr. Hamby's vehicle was traveling at a faster speed than his dirt bike.

As a result of the collision, Jaden testified that he was taken to the hospital in an ambulance and sustained injuries to his left leg, which required surgery. Jaden also explained that he has scarring on his legs, suffers with leg pain when

participating in prolonged activities, and experiences "popping and clicking" in his hip.

### *Ms. Harvey's Testimony*

Ms. Harvey testified that she has lived her entire life in Plaquemines Parish in the Davant/Phoenix area, and as a child, she would ride her bike on the levee in order to get from one area to the other area on the Eastbank of Plaquemines Parish. Ms. Harvey explained that she often saw people riding on the levee with motor vehicles, such as bikes and ATVs, but did not know there was an ordinance prohibiting the use of motor vehicles on the levees, except for vehicles involved with levee maintenance and protection. She noted that there were no signs on the levee that indicated motor vehicle usage was prohibited.

Ms. Harvey further testified that on the day of the collision, Jaden asked permission to go to the trailer park in Calendonia Lane to play with friends. She explained that Jaden had gone to play with friends in Calendonia Lane many times, and that he would ride his dirt bike on the levee in order to get to the trailer park. Ms. Harvey testified that she allowed Jaden to ride his dirt bike on the levee, but he could not ride on the highway because it was too dangerous. She explained that Jaden's brother and cousin returned to the house and informed her that Jaden was hit by a car. Ms. Harvey did not have a vehicle at the time, so she asked her neighbor for a ride to the collision scene.

When she arrived at the scene, Ms. Harvey testified that she saw Jaden in the back of the ambulance with a bloodied face wearing a neck brace, and his pant legs were cut open. She rode in the ambulance to the hospital with Jaden and could hear that he was in extreme pain. Ms. Harvey explained that the medical treatment Jaden

4

received as a result of the collision, including his leg surgery, has resulted in a noticeable limp, and Jaden is now scared to push himself athletically.

*Mr. Winkler's Testimony*

Mr. Winkler, Ms. Harvey's expert accident reconstructionist, testified that during his time as a trooper with the Louisiana State Police, he frequently patrolled the area near the levee and often observed individuals riding ATVs and dirt bikes on the levee. He testified that he never took any enforcement action nor did he observe any members of the Plaquemines Parish Sheriff's Office taking any enforcement action against individuals riding on the levee. Mr. Winkler explained that from his own experience, it was customary for locals to ride on the levee because the levee was optimal to ride ATVs and dirt bikes because of the lack of shoulders and roads available to accommodate such riding activities.

Mr. Winkler explained that his opinion of the collision was based upon his review of the following: statements crash report; color copies of photographs; GPS data from Mr. Hamby's vehicle; documents exchanged through discovery; the investigating trooper's dashcam video with audio; the deposition transcripts of Mr. Hamby, Jaden, and Ms. Harvey; a reconstruction of the incident using an exemplar dirt bike conducted in December 2020; and inspection of the collision scene on December 21, 2020.

During his site examination, Mr. Winkler observed large signs posted for the ferry that read the speed limit for the on-ramp and levee parking area was five miles per hour. Using the GPS data from Mr. Hamby's vehicle, Mr. Winkler explained that Mr. Hamby was traveling at sixteen miles per hour about halfway up the ferry on-ramp, and when the collision occurred, he was traveling about ten miles per hour. Mr. Winkler calculated that Mr. Hamby was thirty-eight to forty-four feet from

impact when he saw Jaden, reacted, and applied his brakes, but was unable to stop before striking Jaden because he was traveling at sixteen miles per hour instead of ten or five miles per hour. Further, Mr. Winkler conducted a reconstruction of the collision utilizing an exemplar dirt bike driven by Jaden whereby he told Jaden to ride the dirt bike at the same speed he rode his dirt bike the day of the collision. Based on Jaden's speed on the exemplar dirt bike, Mr. Winkler determined that Jaden was traveling at thirteen miles per hour on his dirt bike the day of the collision. Mr. Winkler opined that based on where Jaden was located at the time he observed Mr. Hamby's vehicle, Jaden was unable to stop his dirt bike in order to avoid the collision. Mr. Winkler further opined that if Mr. Hamby would have been traveling at ten miles per hour or less, instead of sixteen miles per hour, he would have been able to stop prior to impact and the collision would not have occurred.

At the close of trial, the trial court took the matter under advisement and gave the parties an opportunity to submit post-trial memoranda. On October 24, 2022, the trial court issued a judgment and reasons for judgment. In its judgment, the trial court found both Mr. Hamby and Jaden negligent in causing the collision and apportioned sixty-five percent (65%) fault to Defendants and thirty-five percent (35%) fault to Ms. Harvey, as natural tutrix of Jaden. The trial court awarded special damages in the amount of $8,209.00 for Jaden's medical expenses and general damages in the amount of $200,000.00 for Jaden's past, present, and future pain and suffering; loss of enjoyment of life; emotional distress and mental anguish; and permanent scarring. Additionally, the trial court awarded La. C.C. art. 2315.6 damages in the amount of $10,000.00 to Ms. Harvey, individually.

On November 23, 2022, Defendants filed a timely motion for suspensive appeal, which was signed on November 29, 2022. Ms. Harvey timely answered

Defendants' appeal, asserting that the assessment of any fault to her, either individually or as natural tutrix was error by the trial court.

## STANDARD OF REVIEW

"Appellate courts review findings of fact made by the trial court judge using the manifestly erroneous or clearly wrong standard of review." *Keller v. Monteleon Hotel*, 2009-1327, p. 2 (La. App. 4 Cir. 6/23/10), 43 So.3d 1041, 1042 (citing *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989)). "[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Id.* (internal citation omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Id.*

In order for an appellate court to reverse a trial court's finding of fact, an appellate court is required "to find that the findings are not supported by a reasonable factual basis and that the record demonstrates that the findings are clearly wrong." *Id.* (citing *Stobart v. State through Dep't of Transp. and Dev.*, 617 So.2d 880, 882 (La. 1993)). Ultimately, the appellate court must determine whether the "factfinder's conclusion was a reasonable one." *Id.*, 2009-1327 at p. 2, 43 So.3d at 1042-43.

## DISCUSSION

In their four assignments of error, Defendants assert (1) the trial court erred when it relied on the testimony of Wayne Winkler as a purported expert; (2) the trial court erred when it made unreasonable factual findings and misapplied the law finding Mr. Hamby liable for the accident on January 13, 2017; (3) alternatively, the trial court erred in its allocation of fault; and (4) the trial court erred when it found

7

that Ms. Harvey was entitled to damages for emotional distress under La. C.C. art. 2315.6.

In her answer to Defendants' appeal, Ms. Harvey maintains that the assignment of any fault against her, either individually or as natural tutrix, was an error. In her appellee brief, Ms. Harvey specifically asserts: (1) the trial court erred in allocating fault to Jaden based upon the actions of Ms. Harvey when Defendants failed to plead her fault in their answer; (2) the trial court erred in allocating fault to Jaden based upon the actions of Ms. Harvey when Defendants failed to prove her negligence; and (3) the trial court's allocation of fault to Jaden was excessive.

***Assignment of Error Number One: The trial court erred when it relied on the testimony of Wayne Winkler as a purported expert.***

In their first assignment of error, Defendants assert that the trial court erred when it relied on the testimony of Wayne Winkler as a purported expert. This assignment of error pertains to evidentiary issues. "A trial court's ruling on . . . evidentiary issues will not be disturbed unless a clear abuse of discretion is shown." *Jones v. Peyton Place, Inc.*, 1995-0574, pp. 11-12 (La. App. 4 Cir. 5/22/96), 675 So. 2d 754, 763 (citation omitted); *see also Sanford v. City of New Orleans*, 2003-0883, p. 13 (La. App. 4 Cir. 1/21/04), 866 So.2d 882, 890; *Tadlock v. Taylor*, 2002-0712, p. 7 (La. App. 4 Cir. 9/24/03), 857 So.2d 20, 27. Importantly, an assignment of error cannot be predicated upon a ruling admitting evidence unless there is a timely objection to the evidence. See La. C.E. art. 103; *Leard v. Schenker*, 2006-1116, p. 3 (La. 6/16/06), 931 So.2d 355, 357.

The standard for determining whether a witness is qualified to testify in a matter as an expert is governed by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), as adopted by the Louisiana

Supreme Court in *State v. Foret*, 628 So.2d 1116, 1121 (La. 1993), and applied to La. C.E. art. 702. As this Court observed in *Hooper v. Travelers Ins. Co.*, 2010-1685, 2011-0220, p.4 (La. App. 4 Cir. 9/28/11), 74 So.3d 1202, 1204-05:

> *Daubert* set forth some non-exclusive factors for courts to consider in making a determination as to whether an expert's testimony was relevant and reliable. Those factors include but are not limited to: (1) the testability of the technique or scientific theory; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the technique had gained 'general acceptance.

Review of a trial court's decision to admit or exclude testimony from a witness offered as an expert is reviewed under an abuse of discretion standard. *Id.*, 2010-1685, 2011-0220 at p.6, 74 So.3d at 1205; *see also Cheairs v. State Dep't. of Transp. and Dev.*, 2003-0680 (La. 12/3/03), 861 So.2d 536.

Defendants maintain that Mr. Winkler's methodology used to render his expert opinion is unscientific and unreliable. This Court notes that *Daubert* and *Foret* deal with the admissibility of expert testimony and not the weight that is to be given to such testimony. Likewise, La. C.E. art. 702 also addresses the admissibility of expert testimony. The record is void of a *Daubert* or any other motion attempting to challenge Mr. Winkler's methodology in his expert testimony prior to trial. Furthermore, during trial, when given the opportunity to cross-examine Mr. Winkler for the purpose of having him qualified as an expert, Defendants' counsel failed to do so and objected to Mr. Winkler being qualified as an expert solely based on not knowing the content of his testimony. The only other objection made by defense counsel during Mr. Winkler's testimony was a hearsay objection as Mr. Winkler attempted to testify to what he learned about the local customs of individuals riding on the levee while patrolling as a state trooper. Counsel for Defendants neither objected to the admissibility of Mr. Winkler's testimony nor raised the issue of

9

whether the evidence met the *Daubert* standards. Therefore, we find that Defendants failed to properly preserve their *Daubert* challenge with respect to Mr. Winkler and cannot raise the issue for the first time on appeal.

It is important to note, however, that there is a crucial difference between questioning the methodology employed by an expert witness and questioning the application of that methodology or the ultimate conclusions derived from that application. Only a question of the validity of the methodology employed brings *Daubert* into play. *Tadlock v. Taylor,* 2002–0712, p.5 (La. App. 4 Cir. 9/24/03), 857 So.2d 20, 26.

In the instant case, Defendants not only question the validity of Mr. Winkler's methodology, which brings *Daubert* into play, but they also assert that Mr. Winkler's testimony is unreliable because he attributed no duty to Jaden, assigned Jaden no fault for the accident, and totally disregarded Jaden's deposition and trial testimony that he did see Mr. Hamby yet never attempted to brake. "The weight given expert testimony is dependent upon the expert's professional qualifications and experience, and the facts upon which the opinion is based." *Duran v. Silva*, 2019-0748, p.12 (La. App. 4 Cir. 3/25/20), 293 So.3d 1135, 1143 (citing *Tuft v. Tuft*, 51,293 (La. App. 2 Cir. 1/18/17) (*unpub.*), 2017 WL 4341309, *6). "After weighing and evaluating expert and lay testimony, the trial court may accept or reject the opinion expressed by any expert." *Id*.

"Whether a duty is owned is a question of law." *Rando v. ANCO Insulations, Inc.*, 2008-1163, 2008-1169, p. 27 (La. 5/22/09), 16 So.3d 1065, 1086 (citing *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-1095, p.8 (La. 3/10/06), 923 So.2d 627, 632-33); *Burch v. SMG Schindler Elev. Corp.*, 2014-1356-1358, p. 6 (La. App. 4 Cir. 4/7/16), 191 So.3d 652, 658. Mr. Winkler did not voice an opinion as to whether

Jaden had a duty. Rather, Mr. Winkler testified that based on his investigation, if Mr. Hamby was traveling at five or ten miles per hour, as opposed to sixteen miles per hour, he would have been able to stop and avoid the accident. The trial court relied on this element of Mr. Winkler's testimony in finding Mr. Hamby negligent.

Given the great deference given to the fact-finder regarding its assessment of expert testimony on appellate review, we find the assignment of error related to the expert testimony of Mr. Winkler is without merit. The trial court did not abuse its discretion in admitting the testimony.

***Assignment of Error Number Two: The trial court erred when it made unreasonable factual findings and misapplied the law finding Mr. Hamby liable for the accident on January 13, 2017.***

In their second assignment of error, Defendants assert that the trial court erred when it made unreasonable factual findings and misapplied the law finding Mr. Hamby liable for the accident on January 13, 2017. Under Louisiana's duty-risk analysis, the determination of liability in a negligence case requires proof of five separate elements:

> (1) whether the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) whether the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) whether the defendant's substandard conduct was a cause-in-fact of the plaintiff's injures (the cause-in-fact element); (4) whether the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) whether the plaintiff was damaged (the damages element).

*Hanks v. Entergy Corp.*, 2006-477, pp. 20-21 (La. 12/18/06), 944 So.2d 564, 579 (citation omitted). A negative answer to any of the inquiries of the duty/risk analysis results in a determination of no liability. *Id.*, 2006-744 at p. 21, 944 So. 2d at 579.

11

### a. Duty Element

"The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty, which is a question of law." *Id.* (citing *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-1095, p. 8 (La. 3/10/06), 923 So. 2d 627, 633). In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. *Lemann*, 2005-1095 at p. 8, 923 So. 2d at 633 (citation omitted). The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty. *Id;* citing *Faucheaux v. Terrebonne Consol. Gov't*, 1992-930 (La. 2/22/93), 615 So. 2d 289, 292.

Defendants assert that Mr. Hamby did not owe a legal duty of care to Jaden and that the trial court imposed a duty not recognized under the law because Jaden was recklessly operating his dirt bike on the levee at the time of the accident. Defendants cite to *Alexander v. Parish of St. John the Baptist*, 2009-840, (La. App. 5 Cir. 3/23/10), 33 So. 3d 999, in order to support their position that Mr. Hamby did not owe a legal duty to Jaden. However, *Alexander* is factually distinguishable from the matter before the Court. In *Alexander*, the issue was whether a parish owed a duty in constructing and maintaining a pipeline over a levee to individuals who were illegally operating ATVs on the levee. The trial court granted the parish's motion for summary judgment stating, "The Parish did not owe a duty to this plaintiff . . . The conduct engaged in by plaintiff is one [to] which the Parish's duty does not extend because she was not acting reasonably under the circumstances . . . ." *Alexander*, 2009-840 at p. 4, 33 So.3d at 1002. On appeal, the Louisiana Fifth Circuit never considered *Alexander* on the merits, but instead affirmed the trial court

because the appellant therein failed to supply the appellate court with an appropriate record for review. *Alexander*, 2009-840 at p. 9, 33 So.3d at 1005-1006.

In the case *sub judice*, there are specific duties owed by an individual, such as Mr. Hamby, operating a vehicle. First, Mr. Hamby owed a duty under La. R.S. 32:64(A), which provides:

> No person shall drive a vehicle on the highway within this state at a speed greater than is reasonable and prudent under the conditions and potential hazards then existing, having due regard for the traffic on, and the surface and width of, the highway, and the condition of the weather, and in no event at a speed in excess of the maximum speeds established by this Chapter or regulation of the department made pursuant thereto.

Second, Mr. Hamby owed a general duty owed by all motorists to observe what should be observed. *Mart v. Hill*, 505 So.2d 1120, 1123 (La. 1987). The trial court imposed upon Mr. Hamby the two duties that are always owed by a motorist. Accordingly, we find that the trial court did not err in concluding that Mr. Hamby owed a legal duty of care to Jaden.

### b. *Breach Element*

The "breach of a duty is a question of fact." *D.C. v. St. Landry Par. Sch. Bd.*, 2001-1304, p.22 (La. App. 3 Cir 3/7/01); 802 So. 2d 19, 22, *citing Mundy v. Dept. of Health & Human Resources*, 620 So.2d 811 (La. 1993). "Generally, breach of a duty is the failure to exercise reasonable care under the circumstances." *Id.*, 802 So. 2d. at 22 (quoting FRANK L. MARAIST & THOMAS C. GALLIGAN, LOUISIANA TORT LAW § 6-1, at 139 (1996)).

In this case, Defendants argue that Mr. Hamby did not breach any alleged duty and acted reasonably under the circumstances. First, Defendants contend that there was no reason for Mr. Hamby to look to his left as he approached the top of the levee. Defendants maintain that Mr. Hamby's attention was properly focused on the

road ahead of him and the oncoming traffic and other potential hazards to his right side. However, the evidence demonstrates that pedestrian and motor vehicle travel on the levee was customary for the area. Mr. Hamby testified that he traveled the stretch of road from the Detention Center to the ferry landing hundreds of times, and during those trips, he observed pedestrians walking on the levee. He also testified to seeing motor vehicles, bicyclists, and ATVs driving on the top of the river levee. Additionally, Mr. Winkler testified that based on his experience as a state trooper in the area, it is customary for individuals to ride ATVs and dirt bikes on the levee. Moreover, Ms. Harvey, a life-long resident of Plaquemines Parish, testified that she has seen people riding on the levee with motor vehicles, such as bikes and ATVs, all of the time.

Defendants further aver that Mr. Hamby's view to the left was obstructed by a guardrail, trash can, and a tractor. Mr. Winkler acknowledged these obstructions; however, he also testified that based on the photographs taken on the day of the collision, Mr. Hamby would have a clearer view to his left at about forty-seven feet from impact. Second, Defendants assert that Mr. Hamby had no duty to look to his left under the circumstances. Yet, this assertion is unsupported by the law and facts previously discussed. Based on the evidence in the record, Mr. Hamby should have been on the lookout for individuals riding motor vehicles on the levee. Last, Defendants assert that any argument to the court that Mr. Hamby exceeded the speed limit by traveling sixteen miles per hour is fraudulent. However, Mr. Hamby testified that at the top of the levee, there is a sign stating that the maximum speed limit on the ferry access road is five miles per hour. Furthermore, the trial court determined that the steepness of the access road and inability to see over the levee until reaching

14

its top required Mr. Hamby to drive at a reasonable speed, and that sixteen miles per hour was not a reasonable speed for that location.

We find that the trial court's determination regarding Mr. Hamby's breach of duty is supported by the record and is not clearly wrong. Thus, we conclude that the trial court was not manifestly erroneous in finding Mr. Hamby breached his duty of care.

### c. Cause-in-Fact Element

In *Perkins v. Entergy Corp.*, the Louisiana Supreme Court stated the following on the issue of cause-in-fact:

> Generally, the initial determination in the duty/risk analysis is cause-in-fact. *Boykin*, 707 So.2d at 1230. Cause-in-fact usually is a "but for" inquiry, which tests whether the accident would or would not have happened but for the defendant's substandard conduct. *Id*. Where there are concurrent causes of an accident, the proper inquiry is whether the conduct in question was a substantial factor in bringing about the accident. *Id*. at n. 10; *Jones v. Hawkins*, 1998–1259, 1998–1288, p. 7 (La.3/19/99), 731 So.2d 216, 220; *Rick v. State, Dept. of Transp. and Development,* 93 1776, 93–1784, p. 8 (La.1/14/94), 630 So.2d 1271, 1275; *Dixie Drive It Yourself System v. American Beverage Co.*, 242 La. 471, 137 So.2d 298 (1962). To satisfy the substantial factor test, the plaintiff must prove by a preponderance of the evidence that the defendant's conduct was a substantial factor bringing about the complained of harm. *Dabog v. Deris*, 625 So.2d 492, 493 (La.1993).
>
> This court has made several different inquiries when applying the substantial factor test. For example, the court has stated that when there are multiple causes, clearly cause-in-fact exists when the plaintiff's harm would not have occurred absent the specific defendant's conduct. *Graves v. Page*, 1996–2201, p. 9 (La.11/7/97), 703 So.2d 566, 570.

*Perkins v. Entergy Corp.*, 2000-1372, p.8 (La. 3/23/01), 782 So. 2d 606, 611-612.

Defendants maintain that the "but for" cause of Jaden's injuries was his actions of illegally operating his dirt bike on the levee, and that Jaden's actions were the substantial factor in causing the collision. However, Defendants fail to cite any

evidence in the record that would show that the trial court manifestly erred in its determination of cause-in-fact.

In its reasons for judgment, the trial court determined that both Mr. Hamby and Jaden's actions were substantial factors in causing the collision. Mr. Winkler testified that Mr. Hamby was traveling at sixteen miles per hour when he collided with Jaden. Further, Mr. Hamby testified that he did not look to his left side as he approached the ferry entrance. The trial court recognized that the law prohibited unauthorized individuals from operating motorized vehicles on the levee and determined that had not Jaden operated his dirt bike illegally on the top of the levee, he would not have collided with Mr. Hamby. However, the trial court also recognized that had Mr. Hamby driven at a reasonable speed and looked both to his right and left when approaching the ferry entrance, he would not have collided with Jaden.

On review of the record, we find that a reasonable factual basis exists for the trial court's determination that both Mr. Hamby and Jaden's actions were substantial factors in causing the collision. Therefore, the trial court did not err in its determination of cause-in-fact.

### d. *Scope of Liability/Protection Element*

When determining whether the conduct falls within the scope of protection, the court must assume that a legal duty exists and must question whether the injury suffered by the plaintiff is one of the risks encompassed by the rule of law that imposed the duty. *Magri v. Jazz Casino Co. L.L.C.*, 2019-0063, p.8 (La. App. 4 Cir. 6/26/19), 275 So. 3d 352, 358 (citing *Chatman v. Southern Univ. at New Orleans*, 2015-1179, p. 10 (La. App. 4 Cir. 7/6/16), 197 So.3d 366, 379). "The extent of protection owed to a particular plaintiff is determined on a case-by-case basis to

avoid making a defendant an insurer of all persons against all harms." *Id.*, 2019-0063, p.8, 275 So.3d at 358. When determining the limitation of liability that should be placed on the defendant's conduct, the proper inquiry is to decide how easily the risk of injury to the plaintiff can be associated with the duty being enforced. *Id.*

Defendants assert that the general rule that a motorist should see what he is reasonably expected to see does not encompass the alleged injury here where Jaden came out of nowhere, leaving Mr. Hamby no chance to avoid the accident. However, under the circumstances presented here, we find the risk of colliding with someone while not looking both ways before crossing the levee and driving a vehicle at a speed not reasonable for the environment is a foreseeable risk.

***Assignment of Error Number Three: Alternatively, the trial court erred in its allocation of fault.***

In their third assignment of error, Defendants assert that, in the alternative to assignment of error number two, the trial court erred in its allocation of fault. Defendants contend that the trial court erred in assigning more fault to Mr. Hamby than Ms. Harvey. Conversely, Ms. Harvey maintains that the trial court erred in assigning any degree of fault to her.

"Allocations of fault are factual determinations, which are not to be disturbed by appellate courts in absence of manifest error or unless a particular finding of fact was " 'clearly wrong.' " *Antippas v. Nola Hotel Group, LLC*, 2017-0798, p. 4 (La. App. 4 Cir. 2/27/19), 265 So.3d 1212, 1216 (citing *Aetna Life and Casualty Company v. Solloway*, 25,462 (La. App. 2 Cir. 1/19/94), 630 So.2d 1353, 1356; *Rosell v. ESCO,* 549 So.2d 840, 844 (La.1989)). "Allocation of fault is not an exact science, or the search for one precise ratio, but rather an acceptable range.

17

Allocations of fault within such a range cannot be clearly wrong." *Id.* (citing *Foley v. Entergy Louisiana, Inc.*, 2006-0983, p. 32 (La. 11/29/06), 946 So.2d 144, 166).

In their answer to the petition for damages, Defendants state that the sole and proximate cause of any damages and/or injuries sustained by Jaden were his own actions and inactions, and that these actions and/or inactions are pled in bar of/reductions of any recovery in this litigation. Defendants further invoked any and all immunities and limitations of liability as provided by Louisiana law. Notably, Ms. Harvey is not mentioned in Defendants' answer.

Ms. Harvey filed an answer in response to this appeal. In her answer, Ms. Harvey asserts that the trial court erred in attributing any fault to her, either individually or as natural tutrix, because Defendants failed to allege comparative fault by her in their answer. Procedurally, we find that her answer is properly before this Court. Louisiana Civil Code of Procedure Article 2133 (A) states, in pertinent part:

> An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer.

Ms. Harvey filed an answer seeking to have the trial court's judgment reversed as it relates to any allocation of fault against her individually or as natural tutrix. According to the notice of lodging, the record was lodged on February 3, 2023, and Ms. Harvey filed her answer on February 7, 2023. Ms. Harvey's answer to the appeal was filed less than fifteen days after the lodging of the record. Thus, Ms. Harvey's answer is procedurally proper and can be considered by this Court.

18

Addressing the substance of Ms. Harvey's answer, La. C.C.P. art. 1003 provides:

> The answer shall comply with Articles 853, 854, and 863 and, whenever applicable, with Articles 855 through 861. It shall admit or deny the allegations of the petition as required by Article 1004, state in short and concise terms the material facts upon which the defenses to the action asserted are based, and shall set forth all affirmative defenses as required by Article 1005. It shall also contain a prayer for the relief sought. Relief may be prayed for in the alternative.

Pursuant to La. C.C.P. art. 1005, "The answer shall set forth affirmatively" all defenses, including comparative fault. "The requirement that contributory negligence must be affirmatively pleaded has for its purpose the giving of fair notice of the nature of the defense and preventing surprise." *Austrum v. City of Baton Rouge*, 282 So. 2d 434, 437 (La. 1973) (citations omitted); *See also* La.C.C.P. art. 1005, listing fault of the plaintiff as an affirmative defense. "The policy underlying this requirement [of pleading affirmative defenses] is to give the plaintiff fair notice of a defense and adequate time to prepare an opposition, thus preventing trial by ambush and unfairly aiding the defendant 'who knew about the defense even though the plaintiff was kept in ignorance of the defense.' *Walters v. Metropolitan Erection Co.*, 1994-0162, p.7 (La. App. 4 Cir. 10/27/94), 644 So.2d 1143, 1147 *citing Rider v. Fontenot*, 463 So.2d 951, 956 (La. App. 3rd Cir.1985).

In the judgment, the trial court allocated fault to Ms. Harvey, as natural tutrix of Jaden. The trial court did not allocate fault to Ms. Harvey, individually. The trial court stated in its reasons for judgment that Jaden could not be held personally liable for comparative negligence due to his age at the time of the collision. The trial court found Ms. Harvey liable for Jaden's conduct that contributed to the collision reasoning that Ms. Harvey instructing Jaden to operate his dirt bike on the levee was not reasonable given the amount of traffic using the ferry on a regular basis.

It is a "well-settled rule that the district court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment." *Wooley v. Lucksinger*, 2009-0571, p. 77 (La. 4/1/11), 61 So.3d 507, 572 (quoting *Bellard v. American Cent. Ins. Co.*, 2007-1335, p. 25 (La. 4/18/08), 980 So.2d 654, 671). However, a court of appeal may review the trial court's reasons for judgment to "gain insight" into the trial court's judgment. *Id.*, 2009-0571, p. 78, 61 So.3d at 572; *See also Double NRJ Trucking, Inc. v. Johnson*, 2017-667, p. 7 (La. App. 5 Cir. 5/16/18), 247 So.3d 1125, 1131.

Reviewing the judgment and record before this Court, we find that the trial court erred in allocating fault to Ms. Harvey, as natural tutrix of Jaden, without making a determination of negligence on the part of Jaden. As previously stated, Defendants pled comparative fault of Jaden in their answer to the petition. Further, Louisiana jurisprudence supports the position that a parent is liable for the damages of his or her minor child only when the minor child's negligence is established. Therefore, in order to allocate fault to Ms. Harvey, as natural tutrix of Jaden, the trial court must determine whether Jaden, himself, was negligent.

In *Faia v. Landry*, 249 So.2d 317 (La. App. 4th Cir. 1971), this Court examined whether a father could be held responsible for the damages caused by his minor child. The eight and one-half year old minor child in *Faia* gained entry into another person's automobile, started the engine, and drove the vehicle until it collided with a parked car. *Id.*, 249 So.2d at 318. Two lawsuits were filed against the minor child's father for damages sustained as a result of the collision. *Id.* at 319. The trial court ruled that the minor child was incapable of being negligent, and since the minor child was incapable of being negligent, his father could not be held responsible for the damages caused by his minor child. *Id.*

20

In examining the issue of a minor child's negligence, this Court recognized that children seven years old and younger are not capable of being found negligent, yet children ten years old and older are capable of being found negligent for their actions. *Id.* at 319-320. This Court also recognized the grey area that exists between the ages of seven and ten and held that for this age group, whether a minor child is capable of being held negligent is a "factual determination which must be made in light of the circumstances and facts of each given case." *Id.* at 320. When determining the negligence of a minor child, one must "show to a degree of certainty by a preponderance of the evidence that the child was capable of being negligent as well as showing that the child was in fact negligent." *Id.*

The *Faia* court cites to *Ates v. State Farm Mutual Automobile Insurance Company*, 191 So.2d 332 (La. App. 3d Cir. 1966), where the court determined that the minor child was not contributorily negligent. There, the minor child was involved in a collision with an automobile while riding his bicycle. *Id.*, 191 So. 2d at 333. On appeal, the defendant-driver asserted that the trial court erred in holding that, as a matter of law, a nine and one-half year old child is incapable of contributory negligence. *Id.* at 334. The *Ates* court held, "that in exceptional circumstances a child of nine and a half years is capable of negligence and may therefore be barred from recovery." *Id.* The court further stated that "…the test to be applied to determine the contributory negligence of small children is 'a gross disregard of one's safety in the face of known, perceived and understood dangers.'" *Id.* When this test was applied to the facts of the case, the court determined that the minor child was not guilty of contributory negligence and referenced the fact that the trial judge characterized the child as an "immature nine year old." *Id.* at 335.

In the case *sub judice*, the trial court's judgment on the issue of negligence as it relates to Jaden is unclear. The judgment states "…both parties shall be found negligent in causing the automobile collision, based on the Reasons for Judgment attached hereto. . ." and further apportions fault to Defendants and Ms. Harvey, as natural tutrix of Jaden. However, the judgment does not state whether Jaden, himself, is found negligent in causing the collision. Moreover, in the reasons for judgment, the trial court erroneously states that Jaden cannot be found liable for comparative negligence because of his age at the time of the collision. The jurisprudence establishes that an eight year old can be found to be contributorily negligent depending on the facts and circumstances of the case, and without a determination of Jaden's negligence, Ms. Harvey, as natural tutrix of Jaden, cannot be apportioned any fault. Accordingly, we find that the trial court erred in allocating fault to Ms. Harvey, as natural tutrix of Jaden, without first determining Jaden's negligence. In line with *Faia*, the trial court needs to evaluate Jaden's "capabilities or incapabilities and his appreciation or gross disregard of his safety in the face of known, perceived and understood dangers" in order to determine if he is above the age of discernment and can be found contributorily negligent for the collision. *See Faia*, 249 So.2d at 320. Further, if Jaden is found to be above the age of discernment and capable of being negligent, the trial court must also determine whether he was in fact negligent. For these reasons, we reverse and remand for further proceedings consistent with this opinion.

**Assignment of Error Number Four: The trial court erred when it found that Ms. Harvey was entitled to damages for emotional distress under La. C.C. art. 2315.6.**

In their fourth assignment of error, Defendants assert that the trial court erred when it found that Ms. Harvey was entitled to damages for emotional distress under

La. C.C. art. 2315.6. In *Lejeune v. Rayne Branch Hosp.*, 556 So.2d 559 (La.1990), the Louisiana Supreme Court outlined four circumstances under which mental anguish damages may be recovered. The Legislature codified the *Lejeune* decision by enacting La. C.C. art. 2315.6, which provides, in pertinent part:

> A. The following persons who view an event causing injury to another person, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury: . . . .
>
> (2) The father and mother of the injured person, or either of them. . . .
>
> B. To recover for mental anguish or emotional distress under this Article, the injured person must suffer such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience, and the claimant's mental anguish or emotional distress must be severe, debilitating, and foreseeable. Damages suffered as a result of mental anguish or emotional distress for injury to another shall be recovered only in accordance with this Article.

Louisiana Civil Code of Procedure Article 2315.6 requires, in part, that the plaintiff either view the accident or come upon the accident scene soon after it has occurred and before any substantial change has taken place in the victim's condition. In *Trahan v. McManus*, 1997-1224, pp. 11-12 (La. 3/2/99), 728 So.2d 1273, 1279-80, the Louisiana Supreme Court stated:

> The Legislature apparently intended to allow recovery of bystander damages to compensate for the immediate shock of witnessing a traumatic event which caused the direct victim immediate harm that is severe and apparent, but not to compensate for the anguish and distress that normally accompany an injury to a loved one under all circumstances.

Defendants assert the trial court erred in awarding Ms. Harvey damages for emotional distress because Mr. Hamby did not intend to harm Jaden and the alleged distress was not outrageous as to trigger liability under the statute. In asserting this assignment of error, Defendants confuse the elements for recovery of damages under

La. C.C. art. 2315.6 with those elements for the tort of intentional infliction of emotional distress. First, the trial court undisputedly awarded Ms. Harvey damages under La. C.C. art. 2315.6 and not intentional infliction of emotional distress. Second, La. C.C. art. 2315.6 does not require that the tortfeasor who caused physical injury intended to cause either the physical injury or related mental injury. Whether Mr. Hamby intended to harm Jaden, or whether his actions were outrageous are irrelevant to Ms. Harvey's recovery under La. C.C. art. 2315.6.

The only relevant argument asserted by Defendants is that Ms. Harvey failed to prove her damages under La. C.C. art. 2315.6. This code article "suggests a need for temporal proximity between the tortious event, the victim's observable harm, and the plaintiff's mental distress arising from an awareness of the harm caused by the event." *Trahan*, 1997-1224, p. 11, 728 So.2d at 1279. Recently, in *Cosey v. Flight Academy of New Orleans, LLC*, 2022-0538 (La. App. 4 Cir. 1/18/23), 357 So.3d 445, this Court determined that family members failed to establish their physical, temporal proximity to the airplane crash to support a claim for La. C.C. art. 2315.6 damages. In *Cosey*, family members of a passenger who died in a plane crash sought recovery of damages under La. C.C. art. 2315.6 for infliction of mental anguish and emotional distress after arriving to the crash scene eight hours after the plane crashed and sank into the water. *Id.*, 2022-0538, p.8, 357 So.3d at 450. The family members asserted that they met the temporal proximity requirement based on the mental anguish and uncertainty they experienced for three days between the time of the crash and confirmation of Mr. Hilliard's death. *Id*. at 449. This Court determined that the family did not meet the temporal proximity requirement as they were notified and arrived at the crash scene hours after the crash. *Id*. at 450.

Similarly, in the case *sub judice*, we find that Ms. Harvey lacks the physical, temporal proximity to the collision to support a claim for damages under La. C.C. art. 2315.6. The trial court awarded Ms. Harvey $10,000.00 under La. C.C. art. 2315.6 for witnessing Jaden's severe injuries and pain. While no one disputes that Ms. Harvey may have suffered emotionally due to Jaden's injuries, it is undisputed that Ms. Harvey does not meet the temporal proximity requirement as she did not witness the collision and arrived at the collision scene after Jaden's body was already inside of the ambulance. Accordingly, we find the trial court erred in awarding Ms. Harvey damages for emotional distress under La. C.C. art. 2315.6.

## DECREE

For the foregoing reasons, we reverse the trial court's allocation of fault and remand for further proceedings consistent with this opinion; reverse the trial court's award of La. C.C. art. 2315.6 damages to Ms. Harvey; and in all other respects, affirm the trial court's October 24, 2022 judgment.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH INSTRUCTIONS**